WILLIAM MACAULEY, Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

Plaintiff drove his horse and cart upon a pier, one-half of which belonged to the city, and which it had suffered to become out of repair and unsafe for use. There was a hole in defendant's half of the pier, through which the horse saw and heard the rush of the water, and being frightened, so that plaintiff was unable to control him, backed the cart against the string piece at the edge of the pier; this, being decayed, gave way, and horse and cart fell into the water and were lost. There was no evidence that the horse was unusually vicious or excitable. In an action to recover damages, *held*, that the fact that the horse became frightened did not, under the circumstances, preclude a recovery; that a horse was not to be considered uncontrollable because it shies or is momentarily beyond control of the driver; and, as the cause of the fright was occasioned by the negligence of the defendant, the question was one for the jury.

*Titus* v. *Inhabitants of H.* (97 Mass., 258), *Horton* v. *City of T.* (id., 266), *Fogg* v. *Nahant* (98 id., 578) distinguished.

(Argued November 27, 1876; decided December 12, 1876.)

THIS was an action to recover damages for the loss of plaintiff's horse and cart.

Plaintiff, in his business as cartman, drove upon a pier, one-half of which belonged to the city, to remove some stone. Defendant had suffered its half of the pier to become out of repair and unfit and unsafe for use. There was a hole in defendant's half of the pier, through which the horse caught sight of the water, and, frightened by its surging, shied and backed. There was a string piece at the edge of the pier, but dirt had accumulated against it, and the string piece itself was decayed and rotten, so that, when the cart struck it, it gave way and the horse and cart went overboard and were lost.

Defendant claimed to be relieved from liability because of contributory negligence upon the part of the plaintiff, and by

the fact that the accident was primarily caused by the fright of the horse.

Upon the question of contributory negligence, the court held that the evidence required its submission to the jury. The portion of the opinion upon the other question is as follows :

"Second. The testimony as to the conduct of the horse is, that he got a little restless and frightened at the surge of the water through the hole in the pier, that he shied back a little, and backed the cart against the string piece, the while the plaintiff was unable to control and stop him. The string piece was of less use to resist the action of the horse from the falling of dirt at the side of it, and of no use in stopping him from the rottenness of it. There is nothing apart from this to show that this was not an animal fit to be used in the streets, upon the piers and in other public places and ways of New York city. It is not shown, that the plaintiff would not have been able, in a reasonable time after the horse began to shy and back, being frightened by the noise and motion of the water seen and heard by him through the hole in the dock, to have checked and controlled him. All that is shown is, that becoming scared from the cause mentioned, he backed against the string piece, which from defects in and about it, did not serve the purpose of it, and the cart passed through it or over it, and dragged the horse with it into the water.

" Upon this state of facts, the court at trial was asked to rule, that the plaintiff could not recover. The legal proposition asserted by the defendant, as a basis for the ruling asked, was that this state of facts, showed that this horse by fright, had become actually uncontrollable, so that the plaintiff could not stop him, nor exercise or regain control over his movements, and that in that condition, he came upon the defective string piece which occasioned the injury, and that the injury would not have happened unless he had become so uncontrollable. It is not necessary for us to consider whether this proposition is sound, or whether it is sustained by the authorities cited by defendant, viz. : *Titus* v. *Inhabitants of Northbridge* (97 Mass., 258) ; *Horton* v. *City of Taunton* (id., 266, note) ; *Fogg* v. *Nahant* (98 id., 578). The proposition does not

contain quite an important limitation of it, made by the first of those cases, to wit: that a horse is not to be considered uncontrollable, that merely shies or starts, or is momentarily not controlled by the driver. The testimony in the case in hand did not conclusively exclude the possibility of this element. The sight and hearing of the water was through the hole near the center of the pier, but on the defendant's half of it. The position of the horse and cart as to this hole and to the edge of the pier, the distance which he backed before hitting the string piece; the degree of the fright which was upon him, and the vigor and length of continuance of the exertion of the plaintiff to manage and restrain him, up to the time that the weight of the cart dragged him over, were all proper to be considered in determining the question whether it was a mere shy or start, and whether the loss of control over the horse was momentary. If there was not explicit evidence in the case, to all of these points, there was some, and from that inferences could be made. It is certain that there was not that evidence of the habits and character of the animal, nor of the length of time during which the plaintiff strove in vain to restrain him, nor of the greatness of the space over which the horse moved in backing, to show so conclusively to the court, that the case was out of the limitation above given, as that the court could say as matter of law, that the unlimited proposition propounded by the defendant was a legal result from all the facts and permissible inferences. It was a question for the jury. Besides this, there is an important fact in this case, which does not appear in the cases cited above. The cause of the fright of the horse was one occasioned by the negligence of the defendant. The square hole open in the surface of the pier was not a proper state of the structure. It was the effect of the rush of water as seen and heard through this that excited the horse. It is not shown, nor to be inferred, that he was vicious or unusually excitable. A court might not infer that the same cause would not have had the same effect upon most horses of ordinarily kindness and quiet of temper. It was not to be said that it was any peculiar trick or vice of the horse, or any awkwardness or inex-

perience, or want of skill, of the plaintiff, that caused the temporary loss of control. The natural inference is, that it was the commotion of the water, seen and heard through the hole, which acted upon the natural qualities of the animal and made him so long insensible to the efforts of the plaintiff, generally sufficient to restrain him, as that the other defect in the pier, the insufficient string piece gave occasion for the injury. In the cases cited, the loss of control over the animal resulted from some cause existing in him, or in the lack of care of the driver, or in something which was not chargeable to the defendant as negligence. We are not called upon to express dissent from, or approval of, the principle upon which those cases were decided. They would seem to have been somewhat controlled by the provisions of the statute law of Massachusetts, and to find part of the *ratio decidendi*, in the fact that the loss of the control of the animal was not produced by any thing for which the defendant was responsible. (See *Southworth* v. *Old Colony and Newport Railway Co.*, 105 Mass., 342.)

" There were some requests to charge, which were refused by the court. One was, if the jury believe that the plaintiff's horse was so frightened at the time of the accident as to be beyond the control of the plaintiff, and that the accident happened after the driver had lost control, then the verdict must be for the defendants. It will be perceived that this proposition leaves out both of the elements upon which we have laid stress above. To have made the request conform to our views, as herein expressed, it should have asked also that the jury be told to find that the loss of control over the horse was not momentary, but continued, and that he was frightened by something for which the defendant was not negligently responsible. Omitting these, it stated a rule which the court could not give to the jury without error."

*A. J. Requier* for the appellant.

*Edward P. Wilder* for the respondent.

Folger, J., reads for affirmance.

All concur.

Judgment affirmed.