## ANN YOUNG v. THE DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

*Railway crossing—Negligent injury—Contributory negligence—Age of party injured—Experts—Exceptions—Declaration.*

1. Where a right and duty concur, as where the exercise of the right is contingent on the performance of the duty, the mere failure to discharge the duty is negligence if a third person is injured in consequence.

2. It cannot be said as matter of law that a highway crossing is not obstructed by cars when a space of only sixteen feet is left open; it is a question of fact for a jury, depending on the circumstances.

3. A man and his wife riding in a cutter were approaching a railway track by a road which crossed the track at an acute angle. A freight train on the track lay, apparently, across the road, but after waiting ten minutes for it to move the travelers came nearer and found that a space of sixteen feet was left open. The cars, however, on both sides projected somewhat over the traveled part of the road, and in avoiding them the man, who was driving, had to turn his horse so as to cross the track at a right angle, but the horse sheered and the cutter left the planking and was upset and the woman was injured. *Held*, that it could not be said as matter of law that she was guilty of contributory negligence.

4. The age of a person injured in crossing a railway track in a cutter driven by another may properly be considered in an action against the company for the injury, as bearing upon the question of contributory negligence.

5. The contributory negligence of a person injured in trying to drive across a railway track is not conclusively shown by the fact that others had just crossed it safely; the fact may tend to prove it, but the question is for the jury.

6. If an injury results from the neglect of a railroad company to observe the statutory rule that it shall not leave cars standing across a highway more than five minutes at a time, the company is guilty of negligence and liable for the injury if the person who suffered was not in fault.

7. One does not lose the benefit of an exception merely because the trial judge has failed to rule definitely upon the objection on which it is based, but has permitted the case to proceed subject to the objection, reserving it for consideration.

8. A declaration against a railway company for negligent injury states a good cause of action in alleging that defendant, in placing its cars so as to obstruct a highway crossing and in leaving them there, has so negligently conducted itself as to cause the injury.

9. A freight train lay on a siding to await a coming express, and at a point where a highway crossed the siding the train was divided. The cars on both sides of the road somewhat encroached upon the traveled part of the highway, and a person crossing in a cutter was injured because the driver was obliged in consequence to turn sharply so as to avoid the cars, and as the horse then sheered, the cutter struck a rail and was upset. *Held* (1) that it was proper to show by the testimony of a by-stander that there was room enough on the siding to accommodate the train without encroaching on the highway, —which was not a question for an expert; (2) that the testimony was relevant as rebutting the presumption that the railroad company had done its full duty in putting the cars where they ought to be, since its failure to do so might not be negligence in itself but only under the circumstances of the case.

10. A woman sixty-five years old suing for a personal injury disabling her from work was properly allowed to testify that the preceding season she had one day done all the work of feeding fifteen threshers, and before the injury had done all the cooking for her household, but could not do it since; such evidence was not too remote, nor matter for experts.

Error to Oakland.   (Stickney, J.)   Jan. 22.—April 22.

CASE.   Defendant brings error.   Affirmed.

*W. H. Russell, George Jerome* and *A. C. Baldwin* for appellant.   A railroad company need only leave enough space between cars standing on a track across a highway, to enable persons on the highway to pass: *L. S. & M. S. Ry. v. Miller* 25 Mich. 274; *Tol. & Wab. R. R. v. Goddard* 25 Ind. 185 ; contributory negligence is a legal conclusion from the plaintiff's conduct in this case: *Dun v. Seaboard &c. R. R. Co.* 16 A. & E. R. R. Cas. 363 ; *Hogan v. Chicago, M. & St. P. Ry. Co.* 15 id. 439 ; *Rogstal v. St. Paul, M. & M. Ry. Co.* 14 id. 648 ; *Butterfield v. Western R. R. Co.* 10 Allen 532 ; where a space of sixteen feet or more of the traveled part of a railway crossing is free from cars or other obstructions, as in this case, it is not for the jury to say whether or not the highway is obstructed: *Yahn v. Ottumwa* 60 Ia. 429 ; for other cases of negligence: *Wilds v. Hudson River R. R. Co.* 24 N. Y. 430 ; *Kelley v. Hannibal &c. R. R. Co.* 75 Mo. 138 ; *Daniels v. Clegg* 28 Mich.

32; *Wilson v. Charlestown* 8 Allen 138; *Galena & C. U. R. R. Co. v. Fay* 16 Ill. 558; *Evansville & Crawfordsville R. R. Co. v. Hiatt* 17 Ind. 102; *Warner v. N. Y. C. R. R. Co.* 44 N. Y. 465; *Button v. Hudson R. R. Co.* 18 N. Y. 248; *Detroit & M. R. R. Co. v. Van Steinburg* 17 Mich. 99; *Stucke v. Milwaukee & Miss. R. R. Co.* 9 Wis. 202; *Ind. & Cin. R. R. v. Caldwell* 9 Ind. 397; *Potter v. Chicago & N. W. R. R. Co.* 21 Wis. 372; *Reeves v. Delaware &c. R. R. Co.* 30 Penn. St. 454; *Cleveland &c. R. R. Co. v. Rowan* 66 Penn. St. 396; *West Chester &c. R. R. Co. v. McElwee* 67 Penn. St. 311; *Mitchell v. Chicago & G. T. Ry.* 51 Mich. 236; *Fox v. Glastenbury* 29 Conn. 204; *Thompson v. Bridgewater* 7 Pick. 190; *Butterfield v. Forrester* 11 East 61; *Paine v. Partrich* Carth. 191; *Hyde v. Jamaica* 27 Vt. 464; *Beers v. Housatonuc R. R.* 19 Conn. 566; *Neal v. Gillett* 23 Conn. 437; *Folsom v. Underhill* 36 Vt. 580; *Griffin v. New York* 9 N. Y. 456; *Goldstein v. Chic., Mil. & St. P. R. R.* 46 Wis. 404; *Wood v. Andes* 11 Hun 543; *Durkin v. Troy* 61 Barb. 437.

*Warren N. Draper* and *F. A. Baker* for appellee. The obstruction of a highway by cars standing on a railroad crossing is a public nuisance: *State v. Morris & Essex R. R. Co.* 25 N. J. L. 437; and the company is liable for injuries occasioned thereby: *Murray v. Railroad Co.* 10 Rich. (S. C.) 227; *Bowen v. City Railway* 54 Mich. 496.

CHAMPLIN, J. This action was brought to recover damages for injuries received by plaintiff while crossing defendant's tracks at Drayton Plains, on the 9th day of February, 1884. The defendant's road crosses the highway a few rods east from the depot, and at an angle somewhat less than forty-five degrees. At this point there are two tracks: the main line, and a side track which lies north of the main line and about ten feet therefrom. The highway crossing is planked, and is about twenty feet in width. At the time of the accident the side track was occupied by a west-bound freight train which was awaiting the arrival of the east-bound passenger express train, then nearly due. The freight train backed into the side track from the west, pushed some freight cars east of the crossing, and then cut the train at the crossing, leaving a freight car to the east and the caboose

car to the west of the center line of the highway. The distance between these cars was between sixteen and thirty feet. The witnesses do not agree as to the exact distance. The north-east corner of the caboose was, by testimony of plaintiff's witnesses, over the westerly side of the plank crossing, a distance of about three feet, and the car on the east, which was an ordinary box car, stood close to the planking on that side.

On the morning of the 9th of February, 1884, the plaintiff, with her husband, was traveling east on the highway, with a horse and cutter. He was sitting upon the right-hand side and was driving the horse. Mr. Young, the plaintiff's husband, describes the accident as follows:

"Those cars stood on the side track. In order to get between those two cars we had to turn and go square across, because the car on this side—well, on both sides— the corner of the first car stood out, and the corner of the other, the road being slanting. They stood out so that we were obliged to turn square across. After we had passed between those cars the horse sheered off a little to the further car, and the buggy ran onto the rail,—the cutter ran onto the rail and throwed the cutter over. It catched on the rail. It went onto the first rail and then went down onto the second one and catched the cutter. There was no plank between the rails there. In the traveled part of the highway it was planked between the rails. We couldn't get onto the plank when we first went on, the road being slanting. We could get the cutter onto the plank, but at the further end we couldn't get the cutter onto the plank—the whole of it; one runner run on the rail. I had the reins, one in each hand. I was driving with a tight rein. I was throwed out. As to guiding the horse with the reins, why I was holding the horse tight—holding the reins tight. I was trying to guide him across the track. I was not trying to drive him onto the rails—I was trying to drive him over the crossing; but he sheered from the corner of the car. He sheered from the corner of the car to the right. I mean down this way, [indicating]; that would carry us away from the plank portion of the main track. In trying to get onto the plank I was unable to do so, and was carried onto the rail. I was driving a very good horse. Yes, and a very quiet horse. He was a little nervous when he came to those cars. The cutter

was tipped over, and I and my wife was thrown out. * * * When I was there with my horse and cutter at that crossing, I looked at the bank on my left hand and thought I couldn't turn there; and I thought I rather run the risk of going through instead of turning around; so I run the risk of going through."

Several persons had crossed with the cars in the position they were in when plaintiff crossed, without difficulty and without accident. Mr. Earle drove a spirited and excitable horse and cutter across, immediately ahead of plaintiff.. Edgar Chamberlain drove across with a horse and cutter, and he says that he saw teams ahead of him. They were crossing. One team was a two-horse cutter, not very close ahead of him; might have been six or eight rods. George W. Chapman, another witness produced by the plaintiff, drove across immediately after the accident in the opposite direction from that which plaintiff crossed. He says that he drove through right across the planking where plaintiff and her husband came through, and kept on the plank all the way. The plaintiff was sworn, and testified as follows:

" *Question.* Now, will you state how your husband drove the horse across there; whether he made any turn, and how the horse acted, and all about it?

*Answer.* Well, of course he had to turn. The horse was a little nervous. I was watching the horse principally to see if we were going to get through all right. The cars seemed so near, so high up on each side of us, that the horse seemed a little nervous to go through, and went through a little faster, of course, than we started,—than we were going before we went through. We couldn't cross between the cars directly on this angling road; he run off a little to get around the first car. After he had run around he run out again a little to the further side—to the road—to get around onto the main traveled track. There was a car each side of the track. He reined in the first place to the left hand a little, first to get around the end of the car, and then turned in there. The horse sheered out—he was nervous—he sheered out to the right—that way; that would be away from the next crossing. My husband went to rein out that way, to get onto the plank at the next crossing; one runner struck the track and threw us out; struck the rail of the railway track."

The defendant, under its charter, had a right to construct and maintain its railroad across the public highway where this accident occurred. In doing so, it was its duty to so construct the railroad across the public highway as not to impede the passage or transportation of persons or property along such road (3 Terr. Laws, 1290;) and in the discharge of this duty defendant had constructed a plank crossing in the direction of the highway of a width of about twenty feet. That this crossing was in good condition and was familiar to plaintiff and to her husband is conceded. It was also the duty of defendant in operating its road not to obstruct or impede the travel along the public highway by its cars or trains an unreasonable length of time. The statute has fixed what is a reasonable time in such case, and has limited it to a period not exceeding five minutes at one time. How. Stat. § 3323, subd. 5. At common law, whenever a right is conferred, and a corresponding duty imposed upon a person, he is answerable to another person who sustains damage by the negligent discharge of such duty. Negligence is nothing more than a failure to discharge the duty resting upon one under the circumstances of the case. *Mann v. Railroad Co.* 55 Vt. 484.

It was the duty of the railroad company not to obstruct the traveled portion of the highway at the crossing by placing cars thereon and permitting them to remain an unreasonable time. If it did not discharge this duty, resting upon it in this respect, the defendant is liable to the plaintiff for damages arising from any injury which was the direct consequence of such negligence, unless her own negligence contributed to produce such injury. The defendant requested the court to charge the jury that "the railway company had a legal right to occupy and use any portion of its side tracks within the limits of the highway for a train of cars which was awaiting the arrival of another train at a meeting point, as in this instance, so long as the traveled portion of the highway was left open and unobstructed; *and under such circumstances the highway is not obstructed when a space of sixteen feet or more of the traveled portion is left open for*

*the passage of teams and vehicles.*" This instruction the
court refused to give as a whole, but did give all excepting
these words: "And under the circumstances the highway is
not obstructed when a space of sixteen feet or more of the
traveled portion is left open for the passage of teams and
vehicles."

Whether or not the traveled portion of the highway was
obstructed, was a question of fact for the jury to determine
under the evidence.   The width of the opening would not
in all cases be a just or a safe criterion.   It might be ample
in one case and entirely insufficient in another, depending
upon the manner in which one road crossed the other.   In
this case the public highway crossed the railroad at an angle
*less* than forty-five degrees, and in approaching the crossing
from the direction in which the plaintiff was traveling, the
cars were so near together, according to Mr. Young's testi-
mony, that no passageway could be seen along the traveled
portion of the crossing; and in order to pass between the
cars it was necessary to deviate from the traveled way and
to cross the side track at nearly right angles thereto.   And
if it is true, as testified to by Mr. Young, that the position
of the freight car was such that it drove him off the crossing,
it cannot be said, as matter of law, that an opening between
the cars of sixteen feet or more in width of the traveled por-
tion did not obstruct the highway.

But the defendant claims that the plaintiff was guilty of
contributory negligence in attempting to cross, when, as
claimed by plaintiff, the highway was obstructed; that the
plaintiff and her husband were perfectly familiar with the
crossing, and, seeing the situation of the cars, they must have
known the danger; and that in such case it was plaintiff's
duty to wait until the train had started or the obstruction been
removed.   The testimony is that plaintiff had waited more
than ten minutes, when, driving nearer, he saw the opening
and attempted to drive through.   The question of contribu-
tory negligence was fairly raised by this evidence, but it was
not so plain and unquestionable as to conclusively preclude a
recovery.   It might or might not be negligence for plaintiff

to make the attempt, depending upon the location of the ears, the distance they were apart, and whether, before he made the attempt to pass between them, the corner of the caboose car projected so far over the traveled portion of the plank crossing as to prevent plaintiff's husband from seeing the danger and liability to accident. *Thomas v. Telegraph Co.* 100 Mass. 156. The circuit judge, therefore, properly left the question to the jury in the portion of his charge which we quote, as follows: " Negligence in law consists in a want of that reasonable care which should be exercised by a person of ordinary prudence under all the existing circumstances, in view of the probable danger of injury. Contributory negligence is such want of care which contributes to the injury complained of. Did the plaintiff's husband use and exercise ordinary care in driving through the passage? Did he use ordinary care and caution in approaching the crossing and determining whether he could cross in safety? Did he use ordinary care after passing upon the crossing in driving and guiding his horse? If you find that he did not use due care, but was guilty of negligence, either *in determining whether he could drive across* or in driving his horse across with due care, if he contributed to the injury on account of his negligence, then the plaintiff could not recover."

The circuit judge further charged that the negligence of plaintiff's husband was her negligence, and that she could not recover if either she or her husband was guilty of any negligence which in any way contributed to the injury; and he instructed them " that in determining whether the plaintiff or her husband was guilty of negligence or want of ordinary care which caused or contributed to produce the injuries complained of, you may consider their age, their statement that they saw the witness Earle drive across said track at said point just ahead of them, the character of the horse they were driving for gentleness, together with all other facts and circumstances touching their conduct or the conduct of either of them upon the occasion in question." He also instructed them that " the question of defendant's negligence, and con-

tributory negligence on the part of the plaintiff or her husband, are for the jury to determine from all the facts and circumstances of the case." The charges contained in the last two quotations were excepted to, and error is assigned upon them, and it is urged that even if the age of James Young could be considered at all in connection with the manner in which the horse was driven, certainly the age of the plaintiff, who had no part in the management of the horse, could not properly be taken into account. We see no weight to the objection. The plaintiff's age was proper to be shown in the case, and it was proven without objection. *Hassenyer v. Michigan Cent. R. Co.* 48 Mich. 205. How much weight it had or was entitled to receive on the question of contributory negligence may be difficult to state. It showed, however, that the parties had arrived at the years of discretion, and were called upon to exercise mature judgment in attempting to cross and in driving across the tracks, and it is not perceived how the testimony could in any event prejudice the defendant.

There was no such want of due care shown in the conduct of the plaintiff or her husband as would have justified the court in taking the case from the jury; and unless there was, the verdict cannot be disturbed upon that ground. The fact that other parties had driven across with safety was not conclusive proof of negligence of plaintiff or her husband. That evidence was proper to go to the jury and tended to prove negligence. Whether it established it or not, was for the jury to determine under all the facts of the case. If it be conceded that teams could be driven through the opening left by defendant between its cars, and across the plank crossing, without coming in contact with the rail of the main track, yet, if the freight car obstructed the traveled track, and by reason of such obstruction caused the plaintiff's horse to sheer off so as to throw one runner of the cutter against the rail of the main track, the horse being one of ordinary gentleness, such conceded facts would present a proper question for the jury to determine whether the injury resulted from leaving the freight car in that position, and whether

plaintiff's husband was in the exercise of ordinary care while driving the horse.

No railroad company has the right to obstruct a public highway with its cars an unreasonable length of time, and, as before stated, the Legislature has enacted that this time shall not, in any one instance, exceed five minutes. The liability arises from the duty of the company to leave the traveled part of the highway unobstructed after the expiration of the reasonable time limited by law. A violation of this duty is negligence, and if a party is injured by reason thereof, being free from fault on his own part, wrong and injury concur, and the liability attaches. The testimony of the plaintiff tended to prove that both the freight and the caboose car were left in and obstructed the traveled portion of the highway. But the testimony of the defendant's witnesses tended to prove that the whole planked crossing was left free and unobstructed. The facts were submitted to the jury under proper instructions, and they must have come to a conclusion in accordance with the testimony of plaintiff's witnesses, and we must take the same view of the facts that the jury did. We can only apply the law to those facts. The shying of the horse was the result of the act of the defendant in obstructing the highway. If the car was lawfully there, and defendant had not violated any duty at the time, no liability would have attached, for the reason that, although injury might have arisen from the shying of the horse, the defendant had been guilty of no wrongful or negligent act which concurred in producing the injury.

And here is to be noted the distinction between this case and that of *Gilbert v. Flint & P. M. Ry. Co.* 51 Mich. 488. It was said in that case that "the mere presence of the car in a portion of the highway, and apart from its fitness or liability to produce that consequence" (that is, to frighten a horse of ordinary gentleness), "is not counted on as matter of grievance. The right of action was rested on the assumption that the car there standing was a thing which would naturally scare usually gentle horses. It was therefore a vital question whether it was really a cause of that kind of danger

or not; because, if it was not dangerous in that way, there was no foundation for the action." In this case, in one count of the declaration it is averred that the defendant, as the plaintiff approached the track from a northerly direction, placed upon its side track in said highway and street, and in the center thereof, at said point of intersection, two cars, to wit, one a box or freight car, and one a caboose or way car, thereby wholly obstructing the passage over and upon said street and highway at said point of intersection, and then and there wrongfully, carelessly and negligently permitted the same to remain so placed for a long space of time, to wit, for upwards of twenty minutes, and after such delay said defendant drew its cars apart to enable persons with vehicles to pass between them over and upon said street and highway and across its said tracks, and then and there wrongfully, carelessly and negligently placed said cars, to wit, one box or freight car, and one a caboose or way car, upon either side of the center of said highway, and of the planked and timbered portion thereof, and within the limits thereof, so as to leave a space of less than twenty-two feet between said cars and within said highway, and wrongfully, carelessly and negligently permitted them to remain for a long space of time, to wit, ten minutes, and by such careless, wrongful and negligent acts and conduct of said defendant on etc., at, etc., the cutter drawn by said horse being driven by her husband, was thrown off from the plank placed between the rails of defendant's track at said place of intersection for the convenience and safety of persons passing over and upon said street at that point, was overturned, and said plaintiff, without carelessness or negligence on her part or on the part of her husband, was then and there thrown from said cutter with great force and violence, and received severe and permanent injuries, etc.

Another count is to the same effect, except that it avers that they left the space of less than twenty-two feet, and in such manner as to induce persons passing over said street and approaching the track from the north to erroneously believe that such passage could be made in safety; and it also avers

that through the wrongful and negligent acts of defendant the cutter was thrown off from the planked or timbered portion of said highway between the rails of defendant's main track and upset, etc.

This statement of the declaration shows that the decision in *Gilbert v. Railway* does not apply to this case. At the commencement of the trial, before any testimony was given counsel for defendant objected to the introduction of any testimony under the declaration on the ground that it did not allege a sufficient cause of action. The court said: "The plaintiff may proceed and put in his proofs, and I will examine this question." The trial proceeded and both parties introduced their testimony, and no ruling was made by the judge upon the objection. Exception was duly taken, however, to the ruling in permitting the cause to proceed, and the defendant is entitled to the benefit of its exception to the same extent as if the objection had been overruled and exception taken by the defendant. A circuit judge, by taking an objection under advisement or by taking testimony subject to an objection, cannot by omitting to rule upon it deprive the party of the benefit of an exception if the case goes adversely to him. In such case all objections taken are treated in practice as having been overruled and exceptions duly noted. But we think the objection to the declaration not well taken. Each count of the declaration discloses a good cause of action.

The seventeenth assignment of error is based upon that part of the charge of the court which reads as follows:

" The plaintiff contends that the highway crosses the railway tracks at this point in an angling direction, and that the cars were so placed by the trainmen of the freight train that teams had to pass or go over the crossing at right angles or square across, according to the testimony of some of the witnesses, which threw plaintiff so far to the right that she had to turn her horse sharply to the left to get upon the plank portion of the crossing, and in attempting to do so one runner of the cutter struck the inside rail of the main track, and the cutter was overturned."

And it is claimed that the statement therein contained is not warranted by the testimony in the case; that it

assumes that in passing the cars in question plaintiff's cutter was run off from the plank, and that an effort was being made to get it on again, and that the evidence did not warrant the statement that the cutter struck the inside rail of the main track and was there overturned; and defendant also claims that there is no testimony of any witness "that she had to turn her horse sharply to the left to get upon the plank portion of the crossing," and that no such inference can be fairly drawn from the evidence.

We have examined the record and find that Mr. Young, the plaintiff's husband, testified as follows:

"I tried to get onto the plank on the further side; on this side [indicating]. Yes, I tried to°get onto the plank on the east side; I mean I tried to get onto the east side of those planks,—onto the plank on the east side of the road; the car prevented me from getting onto those planks. I drove on the west end of the car. Here is the freight car standing; here the corner of it; here is the plank; and the horse sheered, and I wanted to get onto the plank to cross the road. * * *

*Question.* Now, I ask you how near you drove to this corner?

*Answer.* I drove as near to it as I could get to it. I mean to say that I drove off from the ends of the plank near this freight car on my left,—one runner. I struck the rail after I passed the corner of the car. I struck the rail on the main track. I was past the car, and I struck the rail on the main track. It was the main track. The position the car stood in drove me off the crossing. * * *

*Q.* Now, you say that you drove around to get around the corner of that car, and as a matter of fact you tipped over here, didn't you,—drove off from the end of these planks?

*A.* Yes. We tipped over on the main track. I don't know whether it was the first or second rail of the main track for certain, but we fell on the rail of the main track, anyway. I was driving slowly; but the horse — I couldn't run her close to the car. I ran it within two or three feet of this car. My horse sheered away, and it brought us further from it; it brought us further to the west. The opening was not parallel with the highway; we had to go square across because the cars were opened that way. I was prevented from keeping on the planking on the main track because I could not turn in six feet.

I don't know how much space there is between these two tracks. I haven't any idea. I know it isn't very far, but I don't know exactly the distance. I don't know whether it is ten feet. I should think it was six feet. I couldn't tell the distance between the tracks. You couldn't keep on the plank on this side. * * * I couldn't tell how far the freight car on the left stood upon the planked portion of the highway; I have no idea how far it stood on it. It stood far enough onto it that I couldn't get onto this side. The snow was on the ground; I couldn't tell whether I got off from the planking on the side track; I didn't notice till I got further across; after I got over the side track I had passed the cars. Between the tracks there was a space anywhere from six to nine feet. The horse sheered a little from the corner of the freight car; I told you that the corner of the freight car prevented me from turning my horse to the left. The horse sheered from the freight car. After passing the freight car I didn't turn my horse to the left and keep on the crossing, because you couldn't turn your horse in six feet and make him come right around onto the track again.

*Q.* As a matter of fact, did you turn him at all?

*A.* Yes; I tried to. It was necessary to turn him six feet. One runner of the cutter I tried to get on the track. When I crossed the first rail of the main track only one runner was on the planking. I am sure about that, and one struck the rail. We had to turn and go right square across. We couldn't go the same way the road run. We had to turn and go right square across. The road was angling and the track was open right square across. I couldn't tell as to how much, if any, the freight car on the left stood over on the plank crossing. * * * This side of the crossing the planking slants off that way, and we had to go right square across this way, and that throwed the planking some eight or ten feet further on the right-hand side,—on the west side. I had to go square across the side track. Driving square across the crossing on the west side would not bring us up west of the crossing on the main track. We could get one runner on the main track. We could get one runner on the planking and the other onto the rail. That is what throwed us over. If the cars had been away so that we could have gone across square with the turnpike, we could have kept on the planking all the way; but they wasn't."

Joseph S. Spencer testified that

"when Mr. and Mrs. Young crossed there he drove up and drove square between the cars, because he had to, in order to get in there. In order to get onto the plank part of the next crossing he had to make back to left again. I saw that he had a rein in each hand, and driving as well as he could, I thought. He was driving all right. He was driving with tight reins, and he had a rein in each hand. I was looking at him as he was driving through there. I was standing right at the back door. I was watching him. There was an accident occurred there. When he went through between these two cars he had to make back to the left again to get onto the planking between the main track, and he didn't quite make it, and the left runner run on the end of the planking, and the right one struck him square against the rail and tipped him square over. He attempted to drive onto the planking."

. It was shown by another witness that the distance between the main and side tracks was ten feet and two inches, and that an ordinary freight car projected twenty-two inches outside of the rails. This would leave eight feet and five inches between the freight car and the main track.

These extracts from the testimony show that the charge of the court was justified by the evidence, and that no error was committed by using the language complained of. Nor do we consider the language of the court embraced in the eighteenth assignment of error misleading. He stated the testimony correctly as to the different measurements, and if he made an error in stating the sum total, it could not operate to mislead the jury.

There is no force in the nineteenth assignment of error, and it is unnecessary to discuss it. The errors assigned from the second to the seventh, inclusive, relate to the rulings of the court in the admission of testimony. No error was committed in the rulings embraced in the second, fifth, sixth and seventh assignments.

The third and fourth demand attention. Joseph S. Spencer, a witness called by plaintiff, was a passenger on the caboose car. He had testified to the position of the cars, the opening between them, the plaintiff's care in driving through, and this question was asked him : " Ques-

*tion.* Will you state whether — how much siding they had there at that time that they weren't using at all?" Counsel for defendant objected to this question as incompetent and irrelevant. The court overruled the objection and the witness answered: "Why, I couldn't say exactly, but then there was quite considerable; I mean this side track that they were on with the cars." Plaintiff's counsel then asked the witness: "Was there any siding that they could have put these cars on—this same siding? Was there room enough for them to put these cars upon without occupying any part of the highway?" To which the same objection and ruling were made, and the witness answered: "There was." The counsel for the defendant contends that both of these questions were incompetent, irrelevant, and immaterial, and his argument in his brief is: (1) That the witness was not shown to have any knowledge of railway tracks, or the working of railway trains at stations, and was not competent to testify as to the condition of any side track, nor as to the safety or possibility of reaching another track at that time, while an express train was approaching on the main line, and then nearly or quite due; that the mere existence of a side track did not warrant the conclusion that it could be safely occupied. (2) The testimony was irrelevant and immaterial, because, if the company had a right to use the siding in question as it was used, then the inquiry as to the other tracks was useless, and had no bearing on the case. If it had not that right, the lack of other or additional siding could not confer the right, nor relieve the defendant from its obligations to the public; that in either view of the case the testimony could only have been called out to prejudice the jury, and it should have been excluded.

With reference to the first branch of the argument, a reference to the questions and replies will show that no inquiry was made concerning any side track except the one occupied by the freight train. As to whether a side track is fully occupied by cars does not require the testimony of an expert. Any one endowed with the sense of sight, who is cognizant of the facts, is competent to testify in answer to the questions

propounded to the witness Spencer. The existence of a side track at a station, which apparently is in condition for occupancy, does justify the inference that it can be safely occupied. And the inference becomes stronger when such side track is in actual use as a siding; and in the absence of any proof to the contrary warrants the conclusion that it can be safely occupied. Whether such testimony was relevant in this case is a question of more difficulty. If this were a case of negligence per se as a violation of a duty enjoined by positive law, the testimony would have been unimportant; but as the negligence complained of consists in not doing what ought to have been done, under the circumstances of the case, it was proper to show all the circumstances of the case; and the condition and situation of the side track, and the position of the cars thereon, and whether it was fully occupied or not, were facts which it was proper to place before the jury, so that they could determine whether the occupancy of and obstruction to the highway, as claimed, was, under the circumstances, reasonable or not. It was not necessary for the plaintiff to make this proof in order to justify a recovery, if there was testimony without it in the case which satisfied the jury of defendant's negligence in the matters alleged in the declaration; still, there was a presumption in favor of defendant, which arises in every case of alleged negligence, that the defendant had performed its duty, and therefore that it would have made a wider opening at the crossing if it had the room to do so; and as the burden of proving negligence was upon the plaintiff, she had the right to rebut this presumption by the introduction of the testimony of the witness, and for this purpose the testimony was relevant.

The plaintiff, after testifying to her injury, and the nature and extent thereof, and how she was affected thereby, testified that she was then sixty-three years of age, and that prior to the time she was injured had charge of the work in the house herself, and did it all herself. She was then asked by her counsel: "Last season did you have any threshers at your place?" and she replied: "Yes, sir; we had them." The counsel then asked her how many. This question was objected

to as incompetent, and error is assigned upon the ruling of the court permitting the question to be asked.  The evident object of the testimony was to place before the jury the physical condition and capability which plaintiff had to perform manual labor previous to the accident, and she was permitted to testify that there were fifteen men the first day, and that she did the work the first day alone, and the second day she had a woman to help her; that before the accident she always did the cooking at home herself, and that she was not able to do it since she was injured.  The testimony was competent. It tended to show the effect of the injury upon her, and it was a statement of facts within her knowledge, and in no sense expert testimony, or requiring professional skill to delineate. Neither was it so remote in point of time as to be irrelevant to the point in issue; that is, the nature and extent of her injury.  The assignments of error are each overruled, and a

Judgment of affirmance must be entered.

The other Justices concurred.