CHESTER PETERSON v. THE CHICAGO & WEST MICHIGAN RAILWAY COMPANY.

64   621
65   295

*Negligence—Obstruction of highway by railroad company—Liability for injury—Horse taking fright at freight car—Contributory negligence.*

1. Upon the facts stated in the opinion,—
   *Held*, that the case was properly submitted to the jury.
2. On the trial of a suit to recover damages from a railway company for its alleged negligence in leaving a freight car standing near the traveled track of a public highway at a railway crossing in a village, by reason of which obstruction plaintiff's horses took fright and became unmanageable, and he was injured,—
   *Held*, that the question whether the car obstructed the highway was properly submitted to the jury, and that, if they found that teams could not cross the railroad track on the usual crossing without the whiffletrees or wheels coming in contact with the bumper of the car, leaving it there was an obstruction to the highway.

3. In such a case, if the fright of the horses was caused by the fault of the defendant, in the absence of any evidence that they were unusually vicious or excitable, they would not be considered uncontrollable because they shied, or were momentarily beyond the control of the driver.

4. The charge of the court on the subject of the contributory negligence of the plaintiff (see opinion) is held to fairly submit that question to the jury.

Error to Allegan. (Arnold, J.) Argued October 20, 1886. Decided February 3, 1887.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin,* for appellant.

*R. M. Parlin* and *Padgham & Padgham,* for plaintiff.

MORSE, J. The plaintiff in this case brought suit against the defendant for injuries received by him on the twenty-eighth day of April, 1885, by his team of horses being frightened at a box car belonging to the railway company, which is alleged to have obstructed the highway, in the village of Fennville, in the county of Allegan, and from such fright running away with him, and throwing him from his wagon. In the Allegan circuit court, before a jury, he recovered a verdict of $1,000.

The errors assigned all relate to the instructions to the jury by the circuit judge.

The defendant's counsel complain of the refusal of the court to give the following requests:

"5. It appears affirmatively by the plaintiff's own testimony that the injury complained of was occasioned, not by an obstruction in the highway, but because one of his horses, which was young and tough-bitted, became so frightened at the car in question (a thing not calculated to frighten horses of ordinary gentleness) that the plaintiff in his then position could not control or manage him, but entirely lost control. Your verdict therefore should be for the defendant.

"6. If the plaintiff, on the occasion in question, had knowledge that his off horse was young, tough-bitted, and in the habit of shying by reason of fright, and his position on the reach of his wagon was such that he could exercise but comparatively little of his ordinary strength in keeping said horse under control, and if, by reason of the fright of the horse and the plaintiff's inability to control him in his then position, he lost such control, and was thereby injured, then you must find that the plaintiff's own negligence contributed to said injury, and your verdict should be for the defendant.

"7. From the plaintiff's own testimony, and from the undisputed facts in the case, your verdict should be for the defendant."

Said counsel also excepted to the following portions of the charge as given:

"If you find from the evidence in this case that on the twenty-eighth day of April, 1885, Mr. Peterson was driving a team of ordinary gentleness along the street or highway in the village of Fennville, and that at that time, and for several days previous, there was standing on the south side of said street or highway a box or freight car on the company's west side track at that place, and placed there by them, and that the north end of said car came up to or extended to the plank crossing usually used for teams to cross on, and if there was no other crossing for teams on said side track, and stood in such a position that teams could not cross on said planking without the wheels of the wagon or whiffletrees coming in contact with said car, or the draw-bar or bumper thereof; and if you further find that, in consequence of the position of said car, and its proximity to the main traveled part of the highway at that place, the team of Peterson became frightened at said car, and became unmanageable, and shied and ran off of said planking over the rails of said crossing north of the planking, and continued to run down the street from such fright occasioned by such car, and that Peterson was exercising due care on his part, and doing all that he could all the time to manage, control, and stop his team, and was unable to stop them, and that the injury did not result from any vice of the horse or horses which Peterson knew or ought to have known, that Peterson was thrown from his wagon and injured, and that such injury was so caused by the team taking fright at said box car,—then I charge you, under such circumstances, the defendant in this case would

be liable for all actual damages sustained by Mr. Peterson from injuries so received."

"If you find from the evidence in this case that the box car stood upon or so near the usual traveled part of the crossing of the west side track that teams could not cross said track on the usual crossing without the wheels or whiffle-trees coming in contact with the end of said car, or with the bumper or draw-bar of said car, and that said car had stood there at one time for more than five minutes when Peterson tried to cross, then I charge you that the placing and leaving the car in that position, for that length of time, would amount to an obstructing of the highway so far as travel is concerned."

The first question to be determined, and the principal one, is whether or not the case should have been taken from the jury, and a verdict directed for the defendant. It will be necessary, in disposing of this proposition, to state, in substance, the evidence upon the part of the plaintiff, as this can only be considered in arriving at a conclusion. If the testimony introduced in behalf of the plaintiff was sufficient to entitle him to go to the jury, the court did not err in submitting it. The weight of the evidence, and the truth of testimony disputed or contradicted on the part of the defense, is to be determined by the jury.

The testimony in plaintiff's behalf tended to show that the track of the defendant's railroad crosses a public highway which constitutes the main street of the village of Fennville. Where it crosses, as aforesaid, there is a main track and two side tracks in the highway. A box car had been left standing in the street upon the west side track some three or four days. The crossing was planked, and the car stood so near the usual place of crossing that, if teams kept the usually traveled track, either the whiffletrees or the wheels would have hit or rubbed against the bumper or draw-bar of the car.

The plaintiff was a farmer and fruit grower, and on the day of the injury was driving a team of ordinary gentleness hitched to a lumber wagon without a box, and plaintiff was

sitting on the hounds of the wagon. He was going after a load of long plank. When he came near to the railroad, he undertook to cross; and when he got near to this box car on the west side track, one of his horses, a young animal five years old, became frightened at the car, and began to "sway off." Plaintiff thought he could urge him across without danger. "I had my doubts whether I could pass it without one wheel going off, but thought it possible that I might go over." The horse finally gave a jump, and threw the other horse off from the planking between the open rails, and in that way crossed the three tracks. The jolting of the wheels upon the rails threw plaintiff from his seat, and the wagon ran over him, injuring him quite severely. The horses ran on. The horse took fright at the car before plaintiff reached the planking, and when he was eight to ten feet therefrom. The horse backed and sheered, and plaintiff slapped him with the lines, and then he gave a spring, shoving the other horse off the planking. He tried his best to get them back in the traveled part of the highway upon the planking, but did not succeed. The team came near turning round, but plaintiff managed to prevent their so doing.

Other parties testified of crossing at this same place while the car was standing in the same position with reference to the traveled part of the highway, and some of them had difficulty in passing by reason of their horses shying at the car, and others did not. The general run of the testimony was to the effect that a wagon could not be driven in the usual traveled track without hitting the bumper of the car, and that the plaintiff used every reasonable effort to prevent the accident.

The car in this case was within the limits of the highway, and had been there longer than the law permits if it obstructed the highway. How. Stat. § 3323, subd. 5.[1]

---

[1] This statute forbids the obstruction of any public highway or street, by cars or trains, for more than five minutes at any one time.

The question whether it obstructed the highway was properly submitted to the jury. *Young v. Detroit, G. H. & M. Ry. Co.*, 56 Mich. 430.

The defendant's witnesses, seven in number, all testified that the car stood two feet from the planking. The counsel contend that, if the bumper or draw-bar came even with the planking, and did not extend over it, as would be the case if their witnesses were believed, the car might be an encroachment upon the highway, but not an obstruction of the traveled part of the way, and that, under the statute and the decisions of this Court, "the railway company had a right to use any portion of its side tracks within the limits of the highway for a train of cars which was awaiting the arrival of another train at a meeting point, so long as the traveled portion of the highway was left open and unobstructed;" citing *Young v. Detroit, G. H. & M. Ry. Co.* in support of this claim.

It is a sufficient answer to this contention that the evidence upon the part of the plaintiff tended to show that the bumper of this car extended over the planking, and it was for the jury to decide the disputed fact, which they did, finding against defendant upon this point.

But this freight or box car was not left temporarily "awaiting the arrival of another train at a meeting point;" and if the testimony of defendant's witnesses is true, I think the car was then an obstruction to the highway within the meaning and intent of the statute. It certainly impeded the safe passage of teams across the traveled track

Much reliance is placed upon the decision of this Court in the case of *Gilbert v. Flint & P. M. Ry. Co.*, 51 Mich. 488, and the court below, as has been seen, was requested by defendant's fifth request to instruct the jury, in accordance with the doctrine of that case, that this car was "not a thing calculated to frighten horses of ordinary gentleness."

This *Gilbert Case* can be distinguished from the one at bar for nearly the same reasons given in the opinion of Justice

CHAMPLIN in *Young v. Detroit, G. H. & M. Ry. Co.*, 56 Mich. 439–441.

In reference to the subject-matter contained in defendant's sixth request the court said to the jury:

" In this case, take into consideration all the circumstances surrounding that transaction,—take into consideration the character of these horses. Were they an ordinary gentle team, or was there something about this off horse that should have put a man specially on his guard? Did he have any reason to apprehend any danger from that horse, from his being tough-bitted, from his being a young horse, or from any other circumstances shown in the case? You are also to take into consideration the position the man was in; that he was sitting on the hounds or reach of his wagon. You should also take into consideration the actions of the horses as he approached that place. Now, would a man of ordinary prudence, with that horse, as he knew him or ought to have known him, have driven with that wagon in that condition, sitting as he did, and attempted to pass that car as it stood there? If a man of ordinary prudence, under all the circumstances surrounding that transaction, would not have made that attempt, in view of the condition in which the horse was acting, and in view of all the circumstances surrounding the transaction, and injury was there produced, then he was guilty of contributory negligence, and he would not be entitled to recover, notwithstanding it was negligence, if you find it, in the railroad company to leave the car there."

The law is fairly and fully set forth above, and the defendant could not reasonably ask any different instruction in this respect.

As to the first portion of the charge as given, objected to by defendant's counsel, which was one of plaintiff's requests, the court further said in connection therewith:

" Of course, you understand me, in order to entitle Mr. Peterson to recover in any event in this case, it is necessary that he should have been free from fault on his part contributing to the injury. I want that to be understood in connection with that request."

I can perceive no error in this part of the charge.

It is claimed by the counsel for defendant that because the

accident happened after the horses became uncontrollable by fright, and would not have happened if plaintiff could have controlled them, that the unmanageable and uncontrollable condition of the team was the direct cause of the injury, and that it cannot be imputed to the position of the box car. He cites *Titus v. Northbridge,* 97 Mass. 258, 265, to sustain this claim.

It is unnecessary to discuss the soundness of the doctrine enunciated in that case, as it does not apply here. In that case the horse was said to be attacked with a disease of the brain known as megrims, which rendered him uncontrollable, and while so unmanageable ran over an embankment.

The court were of opinion that—

" When a horse, by reason of *fright,* disease, or viciousness, becomes actually uncontrollable, so that his driver cannot stop him, or direct his course, or exercise or regain control over his movements, and in this condition comes upon a defect in the highway, or upon a place which is defective for want of a railing, by which an injury is occasioned, the town is not liable for the injury, unless it appears that it would have occurred if the horse had not been so uncontrollable. But a horse is not to be considered uncontrollable that merely shies or starts, or is momentarily not controlled by his driver."

The accident in that case was not like the one at bar. The fright or disease which rendered the horse unmanageable was not occasioned by the negligence or fault of the defendant, as here.

The better doctrine is, in my opinion, found in the case of *Macauley v. Mayor, etc., of New York,* 67 N. Y. 602, where Folger, J., questioned the soundness of the Massachusetts decision, and held that where the fright of the horse was occasioned by the fault of the defendant in the first instance, and in the absence of any evidence that the horse was unusually vicious or excitable, the horse was not to be considered uncontrollable because it shied, or was momentarily beyond

the control of the driver.    See, also, *Smith v. Sherwood,* 62 Mich. 159.

The case was properly submitted in this respect.

The court also correctly instructed the jury that, if they found that teams could not cross the railroad track on the usual crossing without the whiffletrees or wheels coming in contact with the bumper of the car, then the leaving of such car there was an obstruction of the highway.

There was, in my opinion, no error on the trial, and the judgment must be affirmed, with costs.

The other Justices concurred.