C. N. Skjeggerud *vs.* Minneapolis & St. Louis Railway Company.

December 23, 1887.

**Highway—Dedication.**—*Held* that, under the evidence in this case, the question whether defendant had dedicated a highway for public use across its railroad was one of fact for the jury.

**Negligence—Contributory—Obstruction in Highway.**—In determining whether plaintiff exercised ordinary care in attempting to travel a highway known to him to be partially obstructed, evidence that there was no other road by which he could reach his destination, *held*, under the facts of this case, to have been competent.

Appeal by defendant from an order of the district court for Freeborn county, *Farmer*, J., presiding, refusing a new trial, after a verdict of $5,000 for plaintiff.

The defendant's requests, referred to in the third, fourth, fifth, and sixth assignments of error were as follows:

"If you find that there was room on the plank crossing for a team to cross the track, then you will find a verdict for the defendant, even if the car stood part way on one end of the planking, and the plaintiff's horse became frightened at the car and ran away, and the plaintiff was thereby injured as alleged."

"If ordinary experience and sagacity would not have foreseen that the leaving of the car in the position complained of would frighten and cause a span of horses to run away, and that the driver, in consequence of the running away of the horses, would be thrown out and injured, then the position of the car was the remote cause of the accident."

"If the injury was one which a man of ordinary prudence and sagacity would not have foreseen might possibly ensue, from leaving the car in the place, then the position of the car was the remote cause of the accident, and the plaintiff cannot recover."

"If the plaintiff by the exercise of ordinary forethought might have anticipated that his horses would become frightened by the car, then he was guilty of contributory negligence in attempting to drive over the crossing, and he cannot recover."

The map, Exhibit A, referred to in the opinion was as follows:

*B. S. Lewis,* for appellant, upon the question of the dedication by defendant of the highway, cited *Wilder* v. *City of St. Paul,* 12 Minn. 116, (192, 200;) *Kennedy* v. *Le Van,* 23 Minn. 513; *Brakken* v. *M. & St. L. Ry. Co.,* 29 Minn. 41; *Morse* v. *Zeize,* 34 Minn. 35; *Quinn* v. *Anderson,* 70 Cal. 454, (11 Pac. Rep. 746;) *Eastland* v. *Fogo,* 66 Wis. 133; *State* v. *New Boston,* 11 N. H. 407; *Williams* v. *New York, etc., R. Co.,* 39 Conn. 509; *Brinck* v. *Collier,* 56 Mo. 160; *Irwin* v. *Dixon,* 9 How. (U. S.) 10, 32; *Page* v. *Weathersfield,* 13 Vt. 424, 429; *Hall* v. *McLeod,* 2 Met. (Ky.) 98, (74 Am. Dec. 400;) *Durgin* v. *City of Lowell,* 3 Allen, 398; *Bowers* v. *Suffolk Mfg. Co.,* 4 Cush. 332; *State* v. *Horn,* 35 Kan. 717, (12 Pac. Rep. 148;) Gen. St. 1878, *c.* 13, § 47.

The way not being public, plaintiff could not recover. *Tisdale* v.

*Inhabitants of Norton*, 8 Met. 388; *Howland* v. *Vincent*, 10 Met. 371, (43 Am. Dec. 442;) *Sweeny* v. *Old Colony, etc., R. Co.*, 10 Allen, 368, (87 Am. Dec. 644;) *Baltimore & Ohio R. Co.* v. *State*, 62 Md. 479, 487; *Maenner* v. *Carroll*, 46 Md. 193, 217.

*Lovely, Morgan & Morgan*, for respondent.

MITCHELL, J.   This was an action to recover damages resulting from an obstruction by defendant of a public highway which plaintiff was travelling.   The act complained of was leaving a car standing half-way across a 16-foot plank crossing over defendant's road, by reason of which plaintiff was compelled to drive to one side, when his team, being frightened by reason of the proximity of the car, became unmanageable, and shied away from the car, thereby throwing the wheels of the wagon off the plank crossing on to the iron rails of the railroad, which still further frightened the horses, so that they threw plaintiff out into a ditch at the side of the crossing, causing the injuries complained of.

If the *locus in quo* was a highway, there can be no doubt under the evidence that the standing car was an unlawful obstruction, and that this was the proximate cause of the injury.   Hence the main question litigated in the court below was whether this was a public highway, and the principal one here is whether the evidence on that point is sufficient to sustain the verdict.   It is not claimed that any statutory road had been laid out, but that there had been a common-law dedication by defendant.   The situation will be better understood by a map (Exhibit A) attached to the record.   Defendant's road was built in 1877, and a station established at this point called Hartland, and a village of the same name laid out south of the railroad and a little to the south-west of the depot.   This is a small country or village station.   The defendant acquired the premises in question presumably for right of way and station purposes.   At this point the defendant had three tracks,—the west one, called the "main track," adjoining which the depot was built; the middle one, called the "passing track;" and the easterly one, called the "business track" or "siding," adjoining which were a warehouse and hay barn used by parties engaged in buying grain, hay, etc., and shipping them on defendant's road.

The evidence tends to prove that, from the time that defendant's road was built, there has been a public highway (not statutory, but by common-law dedication) running east and west and at right angles to defendant's tracks, and on each side of them, and coming up on the west near the south end of the depot.   This road, on both sides of the railroad, had, from time to time, been more or less worked and improved by the public authorities.   There is also some evidence that, soon after the railroad was built, the public put some plank at the crossing, so as to enable travel to pass.   This was, however, soon taken up by the defendant, which put down new plank crossings over each of their tracks, which they have ever since maintained at their own expense.   These crossings are on a line with each other, and, together with the highway on each side, make one continuous line for travel.   This road (including these crossings) has ever since been extensively and continuously travelled by the public, although on the west side, where the land is all uninclosed, the travel has usually diverged from the roadway prepared by the public, and turned to the south-west in the direction of the village, where the land is higher. This road has been used by all the travel between extensive districts of country east and west of the railroad in this neighborhood, and by the inhabitants of the town of Richland on the east, in coming to and going from the village of Hartland, this being the only crossing anywhere in that vicinity.   The public has always thus used this crossing without objection from defendant.   In common with the general public, the crossing has also been used by those having occasion to do business with the defendant at the station, or with those operating the warehouse, etc., on the business track.   The evidence also shows that these, or similar crossings, are necessary to accommodate those having business with defendant at this point.

Defendant's contention is, in substance, this:   (1) Where a way is kept open by the owner of lands for his own use and necessities, and as a means of access to his mill, factory, or other industry, and without which persons could not patronize him, then the presumption arises that the way was kept and maintained by him for his own use and that of his patrons, and there is no presumption that he has dedicated it to public use, simply because he has left it open, and has

not captiously prevented others from travelling it, and that this presumption applies with especial force to a railroad company, which is bound to furnish means of access to its depot, and from the nature of the case must leave its premises at such a place uninclosed. (2) That as these crossings were necessary for the use of the defendant and its patrons, it cannot be reasonably inferred that it dedicated its property to the public from the mere fact that it used it precisely as its own necessities required; that the use of it by strangers should, under such circumstances, be regarded as permissive, and not adverse to the right of the company, and as furnishing *no* evidence that it intended to dedicate it to public use.

The first of these is doubtless, as a general proposition, good law, at least where the evidence clearly indicates that the *purpose* of the owner in opening and maintaining the way was merely for his own accommodation. But as dedication is a question of intention, and as the facts of each particular case may differ, it is dangerous to formulate a general abstract statement for universal application. As was remarked by Justice Berry in *Morse* v. *Zeize*, 34 Minn. 35, (24 N. W. Rep. 287:) "The questions of the intention of the land-owner, of the significance of his conduct in the premises, and of the public acceptance, are addressed in a rather unusual degree to the plain common sense of a jury, to their knowledge of human nature, and their observation of the way things are ordinarily done." The facts in this case are peculiar. It has special significance to us that the company placed these crossings on a direct line with the travelled highway on each side of their tracks, thus forming one continuous way for public travel. While crossings were doubtless necessary for its own accommodation, and that of its patrons, there is nothing to indicate that, if that was their sole purpose, they might not have been as well placed elsewhere. It is also significant that the use of these crossings by the public, so long permitted by the company without objection, was not casual or limited to those living in the immediate vicinity who might have some special occasion to pass that way, but was a common and continuous use by the general public as a thoroughfare between extensive districts on each side of the railroad. We also think it is entitled to some weight that this was the only cross-

ing anywhere in that neighborhood. While it is true that, if no high-way existed, the company was not bound to furnish one, yet, as it must have been naturally expected that a public crossing would have to be obtained somewhere in this vicinity, and this being a small country station where comparatively little switching would proba-bly be done, such a crossing at this point would presumably not be materially more inconvenient to the company than if established elsewhere. We think the fact that there was no other in that vicin-ity might be legitimately considered in determining the intention of the company in establishing this one. The fact that it was used and necessary for its own accommodation is not, under the circumstances, controlling, for often the land-owner's own convenience is an impor-tant consideration in causing him to make a dedication. The fact that the defendant made and maintained the crossing at its own ex-pense is not at all significant, because, if it dedicated it as a public way, this would be its legal duty under the statute. Our conclusion is that the question of dedication was, under the evidence, one of fact for the jury.

It only remains to consider certain exceptions to the admission of evidence, and to the refusal of the court to give certain instructions to the jury. The defendant assigns as error the admission of evi-dence that there was no road across the railroad in that vicinity ex-cept the one travelled by plaintiff. For reasons already suggested, we think that, under the peculiar circumstances of the case, this ev-dence was admissible upon the question of defendant's intention to dedicate. But it was clearly admissible upon the question whether plaintiff exercised ordinary prudence in attempting to cross at this place. He had crossed there in the morning of the same day on his way from home, and had seen the obstructed condition of the road. It might be argued, as it is here, that he was guilty of negligence to attempt to cross again with knowledge of that fact. A traveller is not guilty of negligence in attempting to pass over a highway that is obstructed or otherwise out of repair, provided the obstruction or other defect is such that a man of ordinary intelligence would reasonably believe that, with proper care and caution, he could pass in safety not-withstanding the defect in the road. What a man of prudence would

do in view of a known defect in the highway would naturally depend somewhat on circumstances. If there was another and safer road near by, which he might use, ordinary prudence might require him to resort to it. On the other hand, if there was none, he might be justified in attempting to use the defective one.

The request referred to in the third assignment of error seems to us so clearly erroneous as not to require discussion. *Young* v. *Detroit, etc., Ry. Co.,* 56 Mich. 430, (23 N. W. Rep. 67.) The requests referred to in the fourth and fifth assignments of error were properly refused, because wholly inapplicable to the case. The act of defendant complained of was not one of mere neglect to perform a legal duty, or the negligent doing of an otherwise lawful act, but the commission of a positive nuisance. That this nuisance was the proximate cause of the accident can admit of no doubt under the evidence. The request referred to in the sixth assignment of error was properly refused, both because it is neither an accurate nor complete statement of the law, and also because the subject to which it refers had been fully covered by the general charge. The other assignments of error are disposed of by what has been already said.

Judgment affirmed.