A. D. ELLSWORTH *vs.* O. M. LORD and others.

April 8, 1889.

**Highway—Common-Law Dedication.**—Evidence considered, and *held* sufficient to support a finding by the trial court that the *locus in quo* had become part of a highway by dedication to the public use for such purpose.

**Same — Rights Retained by Land-Owner.**— Such dedication confers a mere easement for public use as a highway, and the land-owner retains the right to use the land for any lawful purpose compatible with the full enjoyment of the public easement.

**Same—Width of Strip Dedicated, how Ascertained.**—An instruction in this case to the effect that the jury were at liberty, in determining the extent and limits of the land so dedicated to public use for a highway, to consider all the circumstances of the case disclosed by the evidence, including the usual width of highways in the vicinity, the natural boundaries, and reasonable requirements for public use, *held* not erroneous.

The competency and materiality of certain items of evidence considered.

Appeal by plaintiff from an order of the district court for Winona county, *Start, J.*, presiding, refusing a new trial.

*Wilson & Bowers* and *Gould & Snow,* for appellant.

*M. B. Webber* and *Wm. Gale,* for respondents.

VANDERBURGH, J.   The plaintiff is the owner of a flouring-mill and
v.40M—22

appurtenances upon Rolling Stone creek in the town of Rolling Stone, Winona county. Extending across the creek, and over and upon the dam of plaintiff, is a wagon-crossing open to the public, and running to and beyond the plaintiff's mill, and connecting with public highways on each side of the creek, north and south. Whether this travelled way has become a public road and a part of one continuous highway across and beyond the creek, by reason of the dedication of the same for public use as a highway, was the principal issue to be determined upon the trial. The defendants, who were town officers charged with the supervision and control of the highways of the town, claim that the section of the travelled road in question is a public highway, and that the site of the engine-house referred to in the record, which plaintiff has commenced the erection of on the south side of the creek, is within the limits of such highway. Plaintiff brings this suit to enjoin any interference with the structure by the defendants. Upon the trial certain questions of fact were submitted to a jury for their determination, who found specially that the *locus in quo* was a public street or highway, and that the engine-house extended six feet into such street. This question was submitted to the jury for their consideration, solely upon the evidence in the case tending to show a common-law dedication. And the court expressly ruled, and so instructed the jury, that there was no evidence that the travelled way in question, embracing the *locus in quo,* was a legally laid-out highway, or that it had become such by continuous public use and repairs under the statute.

We have examined the evidence in the case fully, and, while we find much conflict in it, we have no doubt that there is sufficient to uphold the decision of the court in refusing to set aside the verdict of the jury. The evidence offered by defendants to prove such dedication is such as is commonly recognized as proper in such cases. Much of it is of the character specially mentioned in *Morse* v. *Zeize,* 34 Minn. 35, 37, (24 N. W. Rep. 287.) It can hardly be necessary or proper to refer to the testimony of the witnesses in detail. The question was one peculiarly for the practical judgment of a jury, and it was carefully and guardedly submitted to them by the court in its instructions; and if in the wide range of evidence allowable in such

cases some evidence which is immaterial or of no value was received, it cannot have substantially prejudiced the plaintiff. *Morse* v. *Zeize*, *supra; Skjeggerud* v. *Minn. & St. Louis Ry. Co.*, 38 Minn. 60, (35 N. W. Rep. 572.)

2. The dedication of the crossing and passage-way laid out and opened by the plaintiff over his dam and flume, and by his mill, for the public use as a highway, does not appear to be inconsistent or to interfere with his private right to use and maintain the dam and water-power, or the full enjoyment of his property, further than is reasonably implied by the nature of such dedication, and necessary for the public easement of travel and passage over the *locus in quo.* It is true that, if the public have acquired the easement of a right of way, as claimed, the land subject to it has passed under the control of the public authorities, and it is to be treated as a public highway; but their jurisdiction extends simply to the purposes of the easement. They are bound to keep it in suitable repair, and to keep it open and free from obstructions, in order to give full effect to the dedication and preserve the rights of the public. "The purpose and use for which the dedication is made must determine the extent of the right parted with by the owner, and acquired by the public. Where, as in the case of a highway, the public acquire a mere right of passage, the owner retains the right to use the land in any way compatible with the full enjoyment of the public easement." *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 407, 412; 2 Dill. Mun. Corp. § 524. Says Washburn, Easem. *137: "It is not necessary, in order to effectuate a dedication, that the owner of the land dedicated should part with the fee of the same. Nor is it inconsistent with an effectual dedication that the owner should continue to make any and all uses of the same which do not interfere with the uses for which it is dedicated." The public use and private right must stand together, and the latter cannot be disregarded by the public authorities, but must be respected in so far as may be compatible with the public right to have a safe, unobstructed, and convenient right of way; and regard must be had to the nature and situation of the property and the circumstances of the case. The grant of a public right of way over a private stream would not imply the right subsequently to interfere with or obstruct

the same or the enjoyment thereof by the owner, any further than might be reasonably necessary for the public use. The piece of road in controversy is the only road across the creek in the immediate vicinity, and the only means of approach to plaintiff's mill open to the public from the south side of the creek, and plaintiff admits that it is important to be kept open and used for such purposes; but he claims that the public have only used it by his permission, and that it is still a private way for his own convenience and the use of those having business at his mill. But as it has been in constant use by the public for many years in crossing the creek at that point, and been kept in suitable repair for such purpose, it is evident that the public easement is not inconsistent with the substantial rights of the plaintiff, and the only serious ground of complaint which the plaintiff has to make is that his control over the *locus in quo* is so far lost that he cannot obstruct the way or interfere with the public easement. The instructions given to the jury on this point were correct.

3. There was no prejudicial error in receiving in evidence the records of a public highway, surveyed and attempted to be laid over the land across the bridge in controversy. The records, save the petition and remonstrance, were not permitted to be read or to go before the jury, and the latter were received for an entirely different purpose, and upon another branch of the case. These records being found defective, and therefore insufficient to establish a statutory road, that branch of the defence was abandoned and eliminated from the case by the direction of the judge. It is clear from the record that the jury were not misled or influenced by the reception of this testimony, or by the evidence of the witness Pudor, introduced in connection with it.

4. Evidence was also received of the usual and ordinary width of public highways in the vicinity at the time when this road is claimed to have been dedicated. And the court instructed the jury that if they should find from the evidence a dedication on the part of the land-owners of the highway in question, and an acceptance of it by the public, they might, in determining the extent thereof so intended to be granted, take into consideration all the circumstances of the case as disclosed by the evidence,—for example, the usual width of high-

ways in the vicinity, and the natural boundaries, and the reasonable requirements for public use; but that it did not necessarily follow that a highway by dedication should be four rods wide. It might be more or less according to the circumstances of each particular case. We think there was no error in this. The ordinary width of highways is a circumstance more or less pertinent in different cases, but proper evidence to go before the jury. *Morse* v. *Zeize, supra;* Ang. Highw. § 155. But the jury have found the width of the road as dedicated considerably less than four rods in width, as only a part of the engine-house is found to be in the street. We think the plaintiff has nothing to complain of in the ruling and charge of the court in this particular.

5. The intention to dedicate may be shown by a great variety of facts and circumstances; and, as said in *Morse* v. *Zeize, supra:* "Upon the matter of intention and conduct it is competent to show that the land-owner desired a public highway at or near the place in question, whether that desire be expressed by declarations or by efforts to secure the establishing of one there in any way. The fact that he desired the highway may well give character to other acts bearing or claimed to bear on the question of intention. So it is competent to show that he invited or encouraged the public to use the place as a highway, as, for instance, by improving or fitting it for such use, or by treating it and allowing the public to treat it and enjoy and use it as a necessary part of a travelled and convenient road. * * * So it may be shown that the land-owner has recognized the highway, and acted upon the basis of its existence, as by making efforts to change or vacate it." In connection with other evidence in respect to the conduct of the owners and the situation of the premises, and that the location was the most natural and feasible place for crossing, it was proper to show that it was for the plaintiff's interest to have a public highway there, and that he desired it, and made efforts to secure or retain it. Hence the petition and remonstrance introduced in evidence as a part of the records upon the application to lay out a highway there, hereinbefore referred to, were competent, and were properly received and submitted to the jury. Considered with the oral evidence, the jury might find that each paper referred

to this particular piece of road. The petition was signed in the firm name by plaintiff's partner, one Miller, then a joint owner with him, and the remonstrance was signed by both; and, if the signature of plaintiff to the petition was not shown to be with his authority, the jury were to judge upon the evidence whether he did not know of or in fact approve of it; and his remonstrance against the changes in the county road petitioned for might be construed by the jury as a ratification and approval of the survey and the location of the highway in that place. The petition, which was for a county road, was addressed to the county commissioners, and describes a part of the route of the proposed road as running " across the Rolling Stone creek at Miller & Ellsworth's mill; thence in a south-west course," etc. "The said proposed road to be in place and lieu of the present highway in said valley between the terminus of said proposed road, which piece of the old road it is hereby asked to be vacated. The names of the owners of the lands through which said proposed highways pass are Miller & Ellsworth," etc. Subsequently the remonstrance was prepared and signed by the plaintiff and others. It was addressed to the county board, and recited as follows: " The undersigned, understanding that you have been petitioned to alter and change the location of the old county road, * * * would respectfully remonstrate against the proposed change, and each part thereof, except so far as applies to that part between Ellsworth's mill and the ' oak tree,' where the old road has been injured by the mill-dam." The construction placed upon the remonstrance by the court was the natural and reasonable one. The jury were instructed that they might construe it in connection with other evidence in attempting to ascertain the points and location referred to, but said " the court construes it that so much of the road as is between the mill and a certain oak tree is excepted by the remonstrance, so far as the remonstrance is concerned; but to what particular oak tree this relates I will leave that to the jury." The plaintiff objects to this construction, but no other can be reasonably given to the language. The court, however, only fixed one point, between which and another, to be ascertained by the jury from the evidence, a portion of the road was excepted from the remonstrance. The evidence was material

and competent, and the ruling and instructions of the court in receiving and submitting it to the jury were correct.

We have not overlooked or disregarded the other assignments of error in the case, but we think none of them are substantial, or such as require to be specially considered on this appeal.

Order affirmed.