LLOYD HANSON v. ROBERT HALL AND OTHERS.[1]

April 1, 1938.

No. 31,405.

[1]Reported in 279 N. W. 227.

*Neil Hughes* and *Walter J. Welch,* for appellants.
*Catherwood, Hughes & Alderson,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Appeal from an order denying defendants' alternative motion for judgment or a new trial.

On June 30, 1936, there was a strike by the Independent Union of All Workers against the Gamble-Robinson Company in Austin. To prevent shipments from reaching that firm, the union detailed the three defendants to Lyle, 11 miles south from Austin, with instructions to stop and search all trucks which they thought might be transporting goods so consigned. They went to Lyle in defendant Gieger's automobile and parked it, with lights dimmed, on a north-and-south street in that village. That street consists of a 20-foot, two-lane pavement with approximately 20 feet of black top gravel on each side and is a part of United States highway No. 218. The car was parked near the west curb pointing south.

About 1:30 that morning plaintiff entered the village from the south on highway No. 218, driving a truck loaded with shelled corn for delivery at Sparta, Wisconsin. About 130 to 150 feet ahead of him was a truck driven by one Louis Elgen, similarly loaded and destined for the same place. Both trucks were traveling about 30 miles per hour. When the trucks entered the village, Gieger turned on his driving lights, and the other two defendants left the automobile and stationed themselves on the west lane of the pavement a few feet north of the automobile and signaled the trucks to stop. Elgen first saw the men when 250 to 300 feet south of them and applied the brakes momentarily, slowing his speed to 20 to 25 miles per hour. Plaintiff saw the brake signal on the Elgen truck,

but he and his relief driver testified that the bright lights of the Gieger car prevented their seeing the defendants on the pavement north of the car. Seeing no obstruction in the road, plaintiff slightly reduced his speed and turned into the west lane of the pavement to pass the Elgen truck. When almost up to the men on the pavement, Elgen further reduced his speed. By this time plaintiff had reached a point opposite the Gieger car and then for the first time saw defendants on the pavement. He swung his truck back into the east lane of the pavement to avoid hitting them, at the same time applying his brakes, and struck the left rear corner of the Elgen truck. For the damage resulting to his truck, plaintiff brought this action.

Defendants' versions of the manner in which the accident happened vary considerably from the foregoing, but the view of the evidence most favorable to the prevailing party must be taken on this appeal. Jacobsen v. Ahasay, 188 Minn. 179, 246 N. W. 670; 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1934, 1937) § 7159; 5 C. J. S., Appeal and Error, § 1562(d); 3 Am. Jur., Appeal and Error, §§ 937, 952; Hack v. Johnson, 201 Minn. 9, 275 N. W. 381; McIlvaine v. Delaney, 190 Minn. 401, 252 N. W. 234.

The questions for decision are: (1) Is plaintiff's contributory negligence a defense to this action; (2) were defendants' acts a proximate cause of plaintiff's damage; and (3) was the jury correctly instructed as to the measure of damages?

Plaintiff complains that his damage was caused by the wilful negligence of defendants. The latter alleged and attempted to prove that plaintiff was contributorily negligent, but the trial court, being of the opinion that defendants were engaged in the active prosecution of a conspiracy to interfere with plaintiff's right to use the highway, refused to submit plaintiff's contributory negligence to the jury on the ground that it was no defense to the cause of action stated.

Our society is builded in part upon the free passage of men and goods, and the public streets and highways may rightfully be used for travel by everyone. 3 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 4168. But inherent in every private right is the duty

to exercise it for a lawful purpose and in a reasonable manner so that the equal rights of others will not be invaded or destroyed. The right to use a highway for purposes of travel does not give a person permission to use it in every fashion which suits his convenience. The right to use a highway extends only to its use for communication or travel; there is no right merely to be on a highway. 16 Halsbury's Laws of England (Hailsham ed.) p. 238. "Streets and highways are dedicated, secured and maintained primarily for public transit, and must be so preserved. All other uses thereof must be subordinated or yield to the right of free and unobstructed passage." State v. Sugarman, 126 Minn. 477, 479, 148 N. W. 466, 467, 52 L.R.A.(N.S.) 999.

Beyond question, it is lawful for workingmen to combine and to strike for the purposes of raising wages, shortening hours, improving working conditions, and securing union recognition. Unassailable also is their right to inform the public, by means of pickets bannering an employer's place of business, of their grievances which give rise to the strike. Gray v. Building Trades Council, 91 Minn. 171, 97 N. W. 663, 63 L. R. A. 753, 103 A. S. R. 477, 1 Ann. Cas. 172; Minnesota Stove Co. v. Cavanaugh, 131 Minn. 458, 155 N. W. 638; George J. Grant Const. Co. v. St. Paul B. T. Council, 136 Minn. 167, 161 N. W. 520, 1055. To carry out these purposes they may make reasonable use of the public streets and highways. Steffes v. Motion Picture M. O. U. 136 Minn. 200, 161 N. W. 524; International P. W. U. v. Orlove, 158 Md. 496, 148 A. 826. While trade unions and their members have a right to use the highways equal to the rights of other members of the public, that right is bounded by equal limitations. It must be exercised for a legitimate purpose and in a lawful manner; the mode of user must not prevent or impede the reasonable use of the highways by others. Steffes v. Motion Picture M. O. U. 136 Minn. 200, 161 N. W. 524; Mackall v. Ratchford, 82 F. 41; Baltic Min. Co. v. Houghton Circuit Judge, 177 Mich. 632, 144 N. W. 209; Jefferson & Ind. C. Co. v. Marks, 287 Pa. 171, 134 A. 430, 47 A. L. R. 745.

Defendants testified that they went to Lyle for the purpose of stopping and searching trucks traveling on the highway; that they

turned on the automobile lights, stood in the highway, and signaled the trucks to stop to carry out that purpose. The right to travel upon a highway does not privilege any person to commit, without lawful justification, any act whereby the exercise of the public right of passage is obstructed or rendered dangerous. Salmond, Torts (9 ed.) p. 290. Any conduct which has this effect is a public nuisance and is a crime against the order and economy of this state. 2 Mason Minn. St. 1927, § 10241. Since the purpose of this statute is to secure to everyone the enjoyment of a public right, the violation of the statute does not give a private individual a cause of action if the only wrong he suffers is one common to all members of the public, that is, if the exercise of his right of travel only is impeded. Restatement, Torts, § 288(b), and comment. But if it is shown that he has suffered some special damage, harm to his person or property, because of the unlawful obstruction of his right, the person violating the statute is civilly liable. Harper, Torts, § 190; Clerk & Lindsell, Torts (9 ed.) p. 457; Pollock, Torts (13 ed.) p. 419; Salmond, Torts (9 ed.) p. 293.

The intentional invasion of the rights of another has been termed wilful negligence. However wilful such act may be, it is in no sense negligent. The very fact that an act is characterized as negligent indicates that harm to another as the result of it was neither foreseen nor intended, although a reasonable man would have foreseen danger to others because of it and would have adopted another course of conduct. Wilful negligence embraces conduct where the infringement of another's right is not only intended but also it is foreseen that the conduct pursued will result in such invasion. Mueller v. Dewey, 159 Minn. 173, 198 N. W. 428; Anderson v. Commr. of Internal Revenue, 81 F. (2d) 457, 104 A. L. R. 676; Restatement, Torts, § 282, comments c, d, § 500, comments f, g.

Admittedly, defendants intended to invade plaintiff's right to the reasonable use of the highway for purposes of travel. Where an action is based on an unintentional invasion of another's right, the contributory negligence of plaintiff is a proper offset to defendant's liability. McFarlane v. City of Niagara Falls, 247 N. Y. 340, 160 N. E. 391, 57 A. L. R. 1. But where the action is based

on an invasion which is both intentional and criminal, the mere negligence of the person whose rights are invaded is no adequate defense. Lambrecht v. Schreyer, 129 Minn. 271, 152 N. W. 645, L. R. A. 1915E, 812; Mueller v. Dewey, 159 Minn. 173, 198 N. W. 428; Hinkle v. M. A. & C. R. Ry. Co. 162 Minn. 112, 202 N. W. 340, 41 A. L. R. 1377; Restatement, Torts, § 481; Harper, Torts, § 151. Only if plaintiff's fault is of a culpability equal to that of defendant will plaintiff's conduct contributing to the cause of his harm be a bar to defendant's liability. Hinkle v. M. A. & C. R. Ry. Co. *supra;* Harper, Torts, § 151. No such conduct by plaintiff is either pleaded or proved in this case.

It follows that the trial court was correct in refusing to submit the question of contributory negligence to the jury.

■ The second question is whether defendants' intentional invasion of plaintiff's interest in unobstructed travel is the proximate cause of the damage of which he complains. The evidence discloses that plaintiff was traveling at a lawful speed, that he turned into the left lane of the pavement in the course of a lawful maneuver, that he was compelled to turn back into the right lane because of the obstruction of the highway by defendants, and that as a result his truck collided with another truck and was damaged. When a person intentionally and unlawfully impedes another in the lawful exercise of a right, the effort of that other to exercise his right is not a superseding cause of the resulting harm. Restatement, Torts, § 446. The fact that defendants intended only to prevent his passage and did not intend to damage his truck does not avert liability. The proximate results of a wrongful act are not limited to those harms which defendants intended or foresaw. 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 7002. Defendants intended a wrongful invasion of plaintiff's rights, and they should have anticipated that their act in carrying out their purpose would lead to the injury of plaintiff's person or property. Restatement, Torts, § 289, comment c. But, whether or not defendants intended to damage plaintiff's property, they did intend an unlawful invasion of his rights and are liable for all of the proximate results of their intentionally unlawful conduct, foreseeable or unforeseeable. Bizzell v.

Booker, 16 Ark. 308; Vandenburgh v. Truax, 4 Denio (N. Y.) 464, 47 Am. D. 268; Vosburg v. Putney, 80 Wis. 523, 50 N. W. 403, 14 L. R. A. 226, 27 A. S. R. 47.

The evidence is sufficient to justify a finding that defendants' unlawful acts were a proximate cause of the harm complained of. Molin v. Wark, 113 Minn. 190, 129 N. W. 383, 41 L.R.A.(N.S.) 346; Edblad v. Brower, 178 Minn. 465, 227 N. W. 493; Rhoden v. Peoria Creamery Co. 278 Ill. App. 452; Meyer v. Neidhoefer & Co. 213 Wis. 389, 251 N. W. 237; Boggs v. Jewel Tea Co. 266 Pa. 428, 109 A. 666; Minnehan v. Hiland, 278 Mass. 518, 180 N. E. 295; Grier v. Scandura, 112 N. J. L. 152, 169 A. 674; McAfee & Co. v. Martin, 34 Ga. App. 247, 129 S. E. 168; Thornton v. Eneroth, 177 Wash. 1, 30 P. (2d) 951; Holt v. Fountain, 218 Ala. 661, 120 So. 149; Carstensen v. Thomsen, 215 Iowa, 427, 245 N. W. 734; Prosser, *The Minnesota Court on Proximate Cause*, 21 Minn. L. Rev. 19.

■ Suit was brought for the cost of repair of the truck, which was alleged to be $200, and for the loss of its use while it was being repaired, which was alleged to be $135. The question of damages was submitted to the jury on this basis by the trial court.

Where the damages to a vehicle are such that repairs will put it in substantially the same condition that it was before the accident, the proper measure of damages is the cost of making such repairs. Engholm v. Northland Transp. Co. 184 Minn. 349, 238 N. W. 795. Plaintiff has expended only $51 in the repair of his truck, but the record shows that the truck is not now in substantially the same condition that it was before the collision, and that to put it in such condition would require considerable additional repair, which would bring the total cost to $200. To be entitled to the cost of repair as the measure of his damages, plaintiff was not bound to put the truck in substantially the same condition that it was before the collision prior to commencing his action.

Defendants contend that plaintiff is not entitled to damages for the loss of the use of his truck. The measure of damages suffered as the result of harm to a commercial vehicle includes the reasonable value of the benefit which would have been derived from its use during the period it was undergoing repairs. Lawndale S. D.

Works v. Chicago Daily News Co. 189 Ill. App. 565. Plaintiff testified that the truck was used for commercial hauling. To recover for damages suffered because of the loss of use it must be shown that another truck could not be hired during that time. Francischini v. McMullen, 6 N. J. Misc. 736, 142 A. 651. Plaintiff testified that he was unable to find any truck available. If it cannot be replaced while it is being repaired, the measure of the value of use of a commercial vehicle is determined by the income derived from its use at the time of the tort. Longworth v. McGrath, 108 Conn. 738, 143 A. 845; Trout A. L. Co. v. Peoples G. L. & C. Co. 168 Ill. App. 56; Cincinnati Traction Co. v. Feldkamp, 19 Ohio App. 421. Plaintiff testified that he cleared about $15 a day from its use. That the time consumed in making repairs was reasonable must also be shown. Allen v. Brown, 159 Minn. 61, 198 N. W. 137. The jury might find that nine days was reasonably necessary since the cab of the truck had to be sent to Mason City, Iowa, to be repaired.

The trial court correctly charged the jury as to the measure of damages.

Order affirmed.

PETERSON, JUSTICE (dissenting).

■ Defendants are held liable because their acts were intentional and wilful, but it cannot be said that they did any illegal or wrongful act intentionally or wilfully. Unless we can say that their acts were negligent or wrongful, liability is being imposed solely because of their state of mind, however lawful their acts may have been. Intentional and wilful acts may be lawful as well as unlawful. There is danger in the use of adjectives. By characterizing an act as wilful, intentional, or as a search, a threat, and so on, there is danger of attaching to it meanings and implications not justified by the act itself. Thus an act otherwise lawful may be given an unlawful significance. We ought scrupulously to guard against this sort of thing. The implications and meanings attached to facts by characterizations and adjectives may make a situation appear different than it really is. This is not to say that

the state of mind of the actor may not be important. Mr. Justice Holmes, in his dissenting opinion in Vegelahn v. Guntner, 167 Mass. 92, 107, 44 N. E. 1077, 1081, 35 L. R. A. 722, 57 A. S. R. 443, a case involving picketing, states the idea. He said that while threats are often used to express lawful as well as unlawful conduct, "it depends on what you threaten. As a general rule, even if subject to some exceptions, what you may do in a certain event you may threaten to do, that is, give warning of your intention to do in that event, and thus allow the other person the chance of avoiding the consequences. So as to 'compulsion,' it depends on how you 'compel.'" So in this case it depends on how these defendants acted. If by legal means, their conduct is legal. If by illegal means, their conduct is unlawful. The necessity for having the realities of the case in mind for purposes of decision, pointed out by Mr. Justice Holmes in Vegelahn v. Guntner, *supra*, has received high praise by English judges. Hodges v. Webb [1920] 2 Ch. 70, 88; Wolstenholme v. Ariss [1920] 2 Ch. 403, 408; Ware and De Freville, Ltd. v. Motor Trade Assn. [1921] 3 K. B. 40, 69.

■ Stating that the purpose of defendants in signaling the trucks to stop was to "search" is an example of characterization and implication which is not justified in this case. After characterizing the purpose as being one to search, the court treats it as an unlawful purpose. I am unable to find one word in the record that it was the purpose of defendants to search, much less to make an unlawful search. Defendants Hall and Rheinhartz were the only witnesses who testified as to their purpose. Other witnesses testified to admissions which they made, consistent with their own testimony. Hall testified that their purpose was to ascertain, and Rheinhartz that it was to see, if the trucks were hauling merchandise to Gamble Robinson. The word "search" is not to be found in the evidence. That defendants might have seen or ascertained by lawful means what the trucks were hauling is perfectly evident. Plaintiff was fully aware of this fact upon the trial. He started upon a line of inquiry to show an unlawful purpose. He abandoned it after Hall answered in the negative a question whether they "were using such means as you [the defendants] thought you could

use to stop traffic there * * *" If defendants had looked into the trucks, the mere seeing what was in them would not constitute an unlawful act. If they ascertained what was in the trucks by observation, by inquiry, and information furnished them, or by a search consented to by those in charge of the trucks, they would be guilty of no wrongful act. Koscielski v. State, 199 Ind. 546, 158 N. E. 902, 904; State v. Quinn, 111 S. C. 174, 97 S. E. 62, 3 A. L. R. 1500; Combest v. State, 32 Okl. Cr. 47, 239 P. 936. In Koscielski v. State, *supra*, it was claimed that an officer made an unlawful search and seizure. It appeared that he saw a keg in the automobile containing liquor. The court said [199 Ind. 549]: "It is not a search in any legal or colloquial sense for an officer to look into an automobile standing on the road side." The court below was not justified in presuming that defendants would do anything illegal. There is a presumption in favor of legality, innocence, and good faith. 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1934, 1937) §§ 3436, 3437. There is an utter failure of proof of unlawful purpose. That the failure was not inadvertent is apparent from the plaintiff's undertaking and then abandoning the inquiry to establish the fact.

■ So it is stated that defendants' purpose was "to prevent" shipments from reaching Gamble Robinson in Austin. The word "prevent" is not used in the record. The only testimony on this point is that of Hall, who testified: "We intended to try to stop them" from carrying shipments to Gamble Robinson. There is no evidence that this was to be accomplished by force, threats, intimidation, fraud, or other unlawful means. The statute authorizes them to persuade others to abstain from patronizing the employer as a party to the labor dispute. 1 Mason Minn. St. 1927, § 4257; American Steel Foundries v. Tri-City C. T. Council, 257 U. S. 184, 42 S. Ct. 72, 66 L. ed. 189, 27 A. L. R. 360, and note; Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. ed. 254, 27 A. L. R. 375. In Alaska S. S. Co. v. International Longshoremen's Assn. 236 F. 964, it was held that evidence that strikers requested drivers of wagons carrying goods to the employer not to deliver the goods did not justify the conclusion that the strikers [236 F. 972] "unlawfully prevented" the wagons from entering piers, because peaceful

efforts to persuade the drivers not to enter the piers "was clearly within the license granted by section 20" of the Clayton Act. 29 USCA, § 52. The prevention of shipments by defendants might have been accomplished by lawful or unlawful means. There is no showing that defendants intended to stop the shipments by unlawful means. In the absence of such a showing, we are bound to say that their intention was lawful.

■ The right of the defendants to signal trucks, like that of the drivers to operate automobiles upon the highway, is recognized by law. That strikers may accost workers taking their places was recognized as lawful in Minnesota Stove Co. v. Cavanaugh, 131 Minn. 458, 155 N. W. 638. The right to signal the trucks to stop is comprehended within the right of peaceful picketing upon the streets and highways, which is declared to be lawful by the provisions of 1 Mason Minn. St. 1927, § 4257.[2] This statute is copied from § 20 of the Clayton Act (38 St. p. 738, c. 323, § 20, 29 USCA, § 52). In ascertaining its meaning we must look to the construction of the Clayton Act by the federal courts. It is not only reasonable to assume that the legislature intended that the state act, which is a copy of the Clayton Act, should receive the same construction by the state courts which the Clayton Act receives by the federal courts, but it is our well settled policy to conform in such matters

[2] "§ 4257. No restraining order or injunction shall prohibit any person or persons, whether singly or in concert, from terminating any relation of employment or from ceasing to perform any work or labor; or from recommending, advising or persuading others by peaceful means so to do; or from attending at any place where any person or persons may lawfully be, for the purpose of peacefully obtaining or communicating information, or from peacefully persuading any such person to abstain from working; or from ceasing to patronize any party to such dispute; or from recommending, advising or persuading others by peaceful and lawful means, so to do; or from paying or giving to, or withholding from, any person engaged in such dispute, any strike benefits or other moneys or things of value; or from peaceably assembling in a lawful manner, and for lawful purposes; or from doing any act or thing which might lawfully be done in the absence of such dispute by a single individual; or shall any of the acts specified in this section be considered or held to be illegal or unlawful in any court of the state."

to the doctrine of the federal courts. Campbell v. Motion Picture M. Operators, 151 Minn. 238, 186 N. W. 787.

Section 20 of the Clayton Act was construed in American Steel Foundries v. Tri-City C. T. Council, 257 U. S. 184, 42 S. Ct. 72, 76, 66 L. ed. 189, 27 A. L. R. 360, and note, to legalize peaceful picketing upon public streets. It states that the object of the act is to reconcile the rights of the employer in his business and the access to and egress from his place of business of his employes without intimidation or interference, and the right of the employes to use peaceable and lawful means to induce present employes and would-be employes to join their ranks and to persuade others to abstain from patronizing the employer as a party to an economic controversy. It declares that strikers have the right to accost others on the street in an inoffensive way, that such accosting is not to be regarded as aggression or violation of the rights of the one accosted, and that the latter shall have the equal right to decline to treat or deal with those accosting. Speaking for the court, Mr. Chief Justice Taft said [257 U. S. 204]:

"How far may men go in persuasion and communication and still not violate the right of those whom they would influence? In going to and from work, men have a right to as free a passage without obstruction as the streets afford, consistent with the right of others to enjoy the same privilege. We are a social people and the accosting by one of another in an inoffensive way and an offer by one to communicate and discuss information with a view to influencing the other's action are not regarded as aggression or a violation of that other's rights. If, however, the offer is declined, as it may rightfully be, then persistence, importunity, following and dogging become unjustifiable annoyance and obstruction which is likely soon to savor of intimidation. From all of this the person sought to be influenced has a right to be free and his employer has a right to have him free."

It was held that each case must turn on its own circumstances and becomes a question for the judgment of the chancellor. It was decreed that the number of pickets should be limited because of

previous acts of violence, but the court was careful to point out that the limits prescribed in that case were not to establish a hard and fast rule for other cases. The decree definitely provided that the strikers [257 U. S. 206] "should be limited to one representative for each point of ingress and egress in the plant or place of business * * * that such representatives should have the right of observation, communication and persuasion," etc. The court stated that it must have every regard to the congressional intention manifested in the act "that ex-employees and others properly acting with them shall have an opportunity, so far as is consistent with peace and law, to observe who are still working for the employer, to communicate with them and to persuade them to join the ranks of his opponents in a lawful economic struggle." This case was decided December 5, 1921. In Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. ed. 254, 27 A. L. R. 375, it was held that § 20 of the Clayton Act prohibited the issuance of an injunction in a labor controversy enjoining peaceful picketing of any person to abstain from patronizing any party to such dispute. These cases definitely determine that peaceful picketing upon public streets and highways is not *per se* unlawful.

In G. N. Ry. Co. v. Local G. F. L. 283 F. 557, the decree provided that the defendants would be allowed two pickets at any point of access to plaintiff's premises where men may or may be expected to enter. The court said that if the entrances were numerous, perhaps more may be necessary, and that the Clayton Act intends that the number of agents shall be governed by the circumstances, citing the American Steel Foundries case, 257 U. S. 184, 27 A. L. R. 360. In G. N. Ry. Co. v. Brosseau, 286 F. 414, the decree provided that the number of pickets at points of ingress and egress be limited to three as fair to both sides, citing § 20 of the Clayton Act and the American Steel Foundries case, *supra*. In these cases the courts decreed that picketing upon the streets was lawful. The statute permits strikers to picket one operating a vehicle. In Alaska S. S. Co. v. International Longshoremen's Assn. 236 F. 964, 972, the court said: "Nor does the evidence justify the conclusion that the defendants unlawfully prevented 'wagons carrying equipment for

said vessels from entering said piers.' The testimony of the driver of the wagon shows that the request was not to deliver, and was clearly within the license granted by section 20 [of the Clayton Act] *supra*."

State statutes copied from and in substantially the same language as § 20 of the Clayton Act legalize peaceful picketing. State courts construing state acts follow the construction of the Clayton Act by the federal courts. Fenske Bros. Inc. v. Upholsterers International Union, 358 Ill. 239, 193 N. E. 112, 97 A. L. R. 1318, and note 1350; Citizens Co. v. Ashville Typographical Union, 187 N. C. 42, 121 S. E. 31; LaFrance E. C. & S. Co. v. Int'l Brotherhood of Elec. Workers, 108 Ohio St. 61, 140 N. E. 899; Walter A. Wood M. & R. Mach. Co. v. Toohey, 114 Misc. 185, 186 N. Y. S. 95, 97 ("The right to picket is, therefore, no longer a debatable question" under the Clayton Act); Ex parte Sweitzer, 13 Okl. Cr. 154, 162 P. 1134; Local Union No. 26 v. City of Kokomo, 211 Ind. 72, 5 N. E. (2d) 624, 108 A. L. R. 1111.

The right to picket is not limited to bannering an employer's place of business. The statute says that it may be exercised "at any place where any person or persons may lawfully be." § 4257. The statute indicates that there should be no geographical limits on the right to picket. The courts should not limit the operation of the statute where the legislature has declined to do so. See Gray v. Building Trades Council, 91 Minn. 171, 185, 97 N. W. 663, 1118, 63 L. R. A. 753, 103 A. S. R. 477, 1 Ann. Cas. 172. The only evidence in the record is that defendants were picketing. This is not disputed. There is no reason why defendants might not attempt to persuade others at a point 10 or 15 miles away from Austin not to patronize concerns in Austin against whom they were striking. In many of the cases the objection has been that the picketing has been too close to the employer's premises. In the American Steel Foundries case the court said [257 U. S. 204]: "The nearer this importunate intercepting of employees or would-be employees is to the place of business, the greater the obstruction and interference with the business and especially with the property right of access of the employer." The implication clearly is that if the picketing

took place at some distance from the plant, it would be less objectionable. Other cases have held that picketing would be less objectionable if done at some distance from the employer's premises. The instant case is the first one in which the claim has been made that the picketing was done at too great a distance from the employer's premises. Heretofore strikers have been condemned for picketing too close to the employer's premises. Now they are being condemned for not picketing close enough. It is like condemning them if they do and if they do not. The question is not where did the picketing take place but whether the acts complained of constitute picketing in fact. In this case the testimony is undisputed that defendants were in fact picketing.

■ Peaceful picketing on a highway is not a nuisance under the statute. So far as here material, a public nuisance is defined by 2 Mason Minn. St. 1927, § 10241(3), as consisting of *"unlawfully doing an act"* which shall interfere with, obstruct or tend to obstruct or render dangerous for passage, a public street or highway. The act of signaling itself was lawful. It amounted to no more than an exercise of the right to accost referred to in the American Steel Foundries case and other authorities *supra*. The signaling for the trucks to stop did not contemplate the obstruction of the highway. On the contrary, it contemplated the performance of lawful acts by the operators of the trucks. The majority opinion holds such picketing to be a nuisance *per se* as an obstruction and interference with the right to use the highway for purposes of travel. The use of highways may be regulated by statute. Uses which do not interfere with the principal and primary use for travel may be permitted. In Cater v. N. W. Tel. Exch. Co. 60 Minn. 539, 63 N. W. 111, 112, 28 L. R. A. 310, 51 A. S. R. 543, which involved the question of whether placing telegraph lines on a highway constituted an additional servitude not authorized by the dedication thereof, Mr. Justice Mitchell discusses the question at length. He said [60 Minn. 543]:

"Another proposition, which we believe to be sound, is that the public easement in a highway is not limited to travel or transporta-

tion of persons or property in movable vehicles. This is, doubtless, the principal and most necessary use of highways, and in a less advanced state of society was the only known use, as the etymology of the word 'way' indicates. * * * It seems to us that a limitation of the public easement in highways to travel and the transportation of persons and property in movable vehicles is too narrow."

The right of a traveler is to use the highway subject to a similar right of every other person lawfully on the highway and subject to such incidental and partial obstructions as the law permits. These rights too are subject to regulations prescribed by law such as the starting, turning, and stopping of automobiles, and others. All these movements interrupt a traveler in his movement upon the highway. They are unavoidable conditions of modern society. See Hickman v. Maisey [1900] 1 Q. B. 752, 67 Irish Law Times, 303.

This precise question is settled by the decision in Senn v. Tile Layers Protective Union, 301 U. S. 468, 57 S. Ct. 857, 862, 81 L. ed. 1229. This case involved the constitutionality of a Wisconsin statute which among other things permitted peaceful picketing on public highways. In upholding the statute the court, in an opinion by Mr. Justice Brandeis, stated [301 U. S. 478]:

"The State may, in the exercise of its police power, regulate the methods and means of publicity as well as the use of public streets. If the end sought by the unions is not forbidden by the Federal Constitution the State may authorize working men to seek to attain it by combining as pickets, just as it permits capitalists and employers to combine in other ways to attain their desired economic ends."

2 Mason Minn. St. 1927, § 10241(3), bans only unlawful acts which interfere with or obstruct the use of the highway. That which a statute makes lawful cannot be said to be unlawful. Since picketing is lawful under § 4257, it was not an unlawful obstruction within the meaning of the first mentioned statute.

■ The mere giving of a signal to stop is not *per se* an obstruction of the highway. In Commonwealth v. Killian, 109 Mass. 345, 347,

12 Am. R. 714, a passenger on a train was held not guilty of obstructing the train by giving a signal by pulling the signal rope in consequence of which the engineer stopped the train. The court said that the act, "however improper, and whatever may be its motive, cannot be regarded as ordinarily or directly dangerous to any one."

The record in this case discloses the absurdity of holding otherwise. In effect, the majority opinion holds that a signal which did not obstruct or interfere with travel upon the highway by Elgen did so as a matter of law and that it was a wilful tort. Elgen, driving the first truck, saw defendants (two of them) standing at the edge of the pavement. "They waved their hands. * * * Signalled for me to stop. * * * They wasn't in my path." He "didn't have any idea what these men wanted" and "didn't know their objective at all," but as he drove past them he applied his brakes because "you naturally would slow up" at the sight of persons on the road, and he said he "was wondering what they wanted me to do." Elgen was not even sure that defendants wanted him to stop. He slowed up because that was his habit when he saw persons on the road. He stopped his truck because of his curiosity, not because any act or manifestation of defendants hindered, obstructed, or thwarted his free forward movement on the highway. On cross-examination he testified:

Q. "And there wasn't anything they did that obstructed your free passage in the highway?

A. "Not in the right lane."

So Elgen, traveling in the right lane, was no more hindered in his passage than he would have been had defendants stood on the sidewalks and shouted or signaled to him. Certainly, as to Elgen, defendants did no unlawful act, for, however determined their purpose, their acts in coaxing him to stop were entirely harmless. There is no evidence whatever that in standing on the edge of the pavement, to the left and far clear of Elgen's line of travel, and waving their hands, defendants did any act which tended to threaten or excite fear in an approaching driver, or in any way interfered

with Elgen's use of the highway. One Irving Olson, who rode with Elgen, testified that Elgen made no effort to stop his truck until he was beyond the point where defendants stood. He testified:

Q. "You proceeded right along, didn't you?

A. "Yes.

Q. "It wasn't that you got an afterthought, after you went by these men to slow down, was it?

A. "That is when we decided to stop.

Q. "After you passed these men?

A. "Yes.

Q. "And that is when Elgen put on his brakes?

A. "After he got by the men, that is when he decided to stop.

Q. "And that is when he did try to stop?

A. "Yes."

■ The act of defendants in signaling the truck to stop amounted to no more than an exercise of the right to accost referred to in the American Steel Foundries case, *supra,* and the act of Elgen in refusing to heed the signal and proceeding past the defendants was but an exercise of his right to decline to treat with the defendants. So far, defendants and Elgen were squarely within the rule of the American Steel Foundries case. After having declined to heed the signal when accosted, Elgen recanted because his curiosity got the best of him. Can it then be said that the defendants were guilty of any wrong in doing what they had a lawful right to do? The negligent doing of an act otherwise lawful, so as to endanger others, causing them injury, may render one liable. Fecney v. Mehlinger, 136 Minn. 42, 161 N. W. 220, L. R. A. 1917E, 271; Munkel v. C. M. St. P. & P. R. Co. 202 Minn. 264, 278 N. W. 41. In Holmberg v. Villaume, 158 Minn. 442, 197 N. W. 849, we held that the driver of an automobile was liable in negligence for permitting his car to stand across a highway after a collision. Such a temporary obstruction was held to render the owner of the car liable not because it was a nuisance but because its presence on the highway created a dangerous situation. See Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630.

The defendants were not negligent under the circumstances because they could not foresee or apprehend any danger to either Elgen or plaintiff in signaling the trucks to stop. Stopping or passing an automobile is not *per se* a dangerous act. It may become dangerous only because of the manner in which it is done. If stopping was dangerous in this case it became so only by the acts of Elgen and plaintiff subsequent to defendants' signal to stop. Statutes regulate both the manner of stopping and passing, and, if complied with, these movements may be accomplished in safety. 1 Mason Minn. St. 1927, § 2720-17, regulates the starting, stopping, and turning from a direct line. It provides that the driver of any vehicle before starting, stopping, or turning from a direct line shall first see that the movement can be made in safety, and "if any pedestrian  *  *  *  may be affected by such movement shall give a clearly audible signal by sounding the warning device." It further provides that whenever a stop is made the driver "shall give a signal either by extending the arm horizontally from and beyond the left side of the vehicle or by an adequate mechanical or electrical signal device, plainly visible to the driver of such other vehicle, of the intention to make such movement at least fifty feet before a stop or turn is to be made, except that the requirement of signal by warning device shall apply to motor vehicles only." Elgen gave a signal that he was stopping which was visible to plaintiff when, according to his own testimony, he was from 130 to 150 feet behind Elgen. The statute requires that the signal be given at least 50 feet before the stop. Elgen's warning was adequate and in full compliance with the statute. The doing of an act authorized by the statute and in full compliance therewith is not unlawful. It makes no difference whether the driver does it of his own volition or pursuant to the solicitation of a bystander. The statute makes its own requirements and regulations, which we are not at liberty to denounce as unlawful.

■ Contributory negligence is a defense whether the acts of defendants be regarded as negligence or nuisance. Plaintiff in his complaint alleged that his acts were "without any negligence," thereby recognizing that the defense of contributory negligence was

available to defendants, and assuming the burden of disproving that he himself was guilty of such negligence. This court is definitely committed to the rule that contributory negligence is a defense to an action for personal injuries caused by nuisance. In Skjeggerud v. M. & St. L. Ry. Co. 38 Minn. 56, 62, 35 N. W. 572, 575, a railroad company placed a car on its tracks so as partially to obstruct a highway. Mr. Justice Mitchell, describing the wrong, said:

"The act of defendant complained of was not one of mere neglect to perform a legal duty, or the negligent doing of an otherwise lawful act, but the commission of a *positive nuisance*."

It was held that the plaintiff's alleged contributory negligence was a defense, and the question was one for the jury. The decision in that case is decisive of the instant one. That was a case of intentional act. Certainly the car was placed on the tracks partly across the highway by the intentional act of the railroad's employes. The rule which we applied in that case has been applied in many situations in which the alleged obstruction was regarded as an absolute nuisance: Pole placed across highway, Butterfield v. Forrester, 11 East, 60; lime rubbish in highway, Flower v. Adam, 2 Taunt. 314; stick projecting into highway, Smith v. Smith, 2 Pick. (Mass.) 621, 13 Am. D. 464; truck left standing in public street, Powell v. Deveney, 3 Cush. (Mass.) 300, 50 Am. D. 738; logs and treetops in a public highway, Harlow v. Humiston, 6 Cow. (N. Y.) 189; excavation in highway, Pfau v. Reynolds, 53 Ill. 212; an unregistered automobile, a nuisance because "an outlaw and trespasser on the highway," Brown v. Alter, 251 Mass. 223, 146 N. E. 691, 38 A. L. R. 1036; eaves and rafters projecting into a public alley, Curtis v. Kastner, 220 Cal. 185, 30 P. (2d) 26. See McEniry v. Tri-City Ry. Co. 254 Ill. 99, 98 N. E. 227; 2 Chitty's Blackstone, Book 3, p. 173, note (7): "And if the plaintiff has not acted with ordinary care and skill, with a view to protect himself from the mischief [obstruction in highway], he cannot recover." 16 Halsbury's Laws of England (Hailsham ed.) p. 365, note (g): "To such an action [by a traveller specially injured by a nuisance in the highway] contributory negligence will afford an answer." 29 Ill. L. Rev. 372, 380.

The defense of contributory negligence accorded to the railroad company in the Skjeggerud case, 38 Minn. 56, 35 N. W. 572, ought not be denied to strikers. The rule which we applied in the Skjeggerud case goes further than we are required to go in the case at bar. In this case there is no proof of positive nuisance. If defendants' acts amounted to a nuisance it is one arising out of negligent acts, to which contributory negligence is a defense. The gravamen of the wrong in such cases is the negligent creation of a situation dangerous to others on the highway. In McFarlane v. City of Niagara Falls, 247 N. Y. 340, 160 N. E. 391, 57 A. L. R. 1, it was held that contributory negligence of the plaintiff is available in such cases. The opinion was written by Mr. Justice Cardozo, then chief judge of the court of appeals of New York. See 29 Ill. L. Rev. 372; 19 Minn. L. Rev. 249.

Modern traffic conditions require that the defense of contributory negligence be available in cases of this kind. In Brown v. Alter, 251 Mass. 223, 224, 146 N. E. 691, 692, 38 A. L. R. 1036, the court said:

"The congestion upon highways has become so great that the general public safety seems to demand that there be no relaxation of the requirement of due care on the part of all travelers."

My difficulty is not in saying whether or not the evidence made plaintiff's contributory negligence a question for the jury but whether we should hold as a matter of law that he was guilty of contributory negligence. Plaintiff testified that he saw Elgen signaling for a stop when he was 130 to 150 feet back; that the stop signal was on all the time until the collision occurred; that he could not see because of the blinding lights from the Gieger car; that even though he could not see and knew that he was driving through a municipality, he turned over to the left-hand side of the pavement; that he proceeded blindly forward at 30 miles per hour and did not see defendants until he was even with the Gieger car and about 15 or 20 feet from defendants. Whether he did not see, as he says, or did see, as we might say he did from other testimony, makes no difference. His conduct was reckless and wanton. It

was dangerous to himself and to others then on the highway. 5 Am. Jur., Automobiles, § 429. In my judgment, the evidence at least made a case for the jury on plaintiff's wanton and wilful negligence, which would be not only a defense if defendants were found guilty of nuisance or negligence, but would be a defense even if they were found guilty of wilful and wanton negligence under the rule of Hinkle v. M. A. & C. R. Ry. Co. 162 Minn. 112, 202 N. W. 340, 41 A. L. R. 1377.

What I have said is based entirely upon the provisions of § 4257. I have not overlooked 3 Mason Minn. St. 1936 Supp. §§ 4260-1 to 4260-4, which declares the public policy of Minnesota to permit peaceful picketing on the public streets. This case may be decided entirely independent of the last mentioned statute.

In my judgment, there is no liability in this case either upon grounds of nuisance or negligence. The effect of the decision is to make pickets trespassers on the highway. I am not willing to so hold. Imposition of absolute liability and denial of the defense of plaintiff's contributory negligence are without legal justification. We should reverse in this case.